BOARD OF EDUCATION OF THE TOWN OF SOMERS ET AL.
*v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(13546)
(13547)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued January 10—decision released April 4, 1989

*William R. Connon,* for the appellants in both cases (plaintiffs).

*Mitchell W. Pearlman,* general counsel, with whom were *Constance L. Chambers,* assistant general counsel, and, on the brief, *Marianne D. Smith,* former assistant general counsel, for the appellee in both cases (named defendant).

COVELLO, J. The dispositive issue in these appeals is whether documents that (1) describe the goals and objectives of Somers school administrators, and (2) evaluate and otherwise comment on the job performance of Somers public school employees must be disclosed to the public at large under General Statutes § 1-19.[1] On May 11, 1983, The Journal Inquirer

---

[1] General Statutes § 1-19 provides in part: "ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive

requested access to all the documents in the possession of the school superintendent of the town of Somers that describe the goals and objectives of Somers school administrators. These goals and objectives are part of an evaluation procedure used to promote professional growth in the Somers school system. On August 12, 1983, The Journal Inquirer submitted a second request, this time for access to all documents in the possession of the school superintendent relating to evaluations of the school system's employees. After both requests were denied, The Journal Inquirer filed complaints with the Freedom of Information Commission (FOIC) alleging that the board of education of the town of Somers (board) violated the Freedom of Information Act by refusing to disclose the requested documents. The board disputed this contention and argued that the requested documents were exempt from disclosure under § 1-19 (b) (2).[2] In two separate decisions the FOIC ordered the board to release all of the requested documents.[3]

---

a copy of such records in accordance with the provisions of section 1-15. Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located or of the secretary of the state, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein. Each such agency shall make, keep and maintain a record of the proceedings of its meetings."

[2] General Statutes § 1-19 (b) (2) provides: "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy."

[3] The FOIC, however, exempted from this order records that might have contained references to persons other than the employees.

Pursuant to General Statutes § 1-21i (d), the plaintiffs appealed the FOIC's orders to the Superior Court. During the pendency of those appeals, the General Assembly enacted legislation addressing part of the specific dispute now before us. Public Acts 1984, No. 84-276, § 1 (codified at General Statutes § 10-151c), made it clear that records of teacher performance and evaluations are not public records and therefore are not subject to disclosure under § 1-19.[4]

On April 14, 1988, the trial court affirmed the FOIC's decisions and rendered judgment in each case dismissing these appeals. On May 5, 1988, the plaintiffs appealed the trial court's decisions to the Appellate Court and the two cases were consolidated. We thereafter transferred the appeals to ourselves pursuant to Practice Book § 4023.

On appeal the plaintiffs argue that the trial court erred: (1) in failing to conclude that the requested documents that evaluate or otherwise comment on teacher performance fall within the exemption created by § 10-151c; and (2) in concluding that all of the documents that comment on or evaluate the job performance of any and all employees are not exempt from disclosure under § 1-19 (b) (2).

I

The plaintiffs first argue that the trial court erred in failing to apply retroactively § 10-151c which

---

[4] General Statutes § 10-151c provides: "RECORDS OF TEACHER PERFORMANCE AND EVALUATION NOT PUBLIC RECORDS. Any records maintained or kept on file by any local or regional board of education which are records of teacher performance and evaluation shall not be deemed to be public records and shall not be subject to the provisions of section 1-19, provided that any teacher may consent in writing to the release of his records by a board of education. Such consent shall be required for each request for a release of such records. For the purposes of this section the term 'teacher' shall include each certified professional employee below the rank of superintendent employed by a board of education in a position requiring a certificate issued by the state board of education."

specifically exempts from disclosure teacher evaluations and records. We agree.

"In determining the intended effect of a later enactment on earlier legislation, two questions must be asked. 'First, was the act intended to *clarify* existing law or to *change* it? Second, if the act was intended to make a change [in existing law], was the change intended to operate retroactively?'' (Emphasis added.) *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 540, 489 A.2d 363 (1985)." *State* v. *Magnano*, 204 Conn. 259, 277, 528 A.2d 760 (1987). In light of its legislative history we are persuaded that General Statutes § 10-151c was intended to clarify, not change, existing law. For example, Representative Michael Helfgott stated: "In my opinion, the FOI commission exceeded its authority in rendering the decision that it recently rendered saying that the public has access to teacher evaluation files. . . . [I]t's my understanding that all evaluations are private documents, they're privileged, and that in fact the public should not have access to that. I would say again that in my opinion the FOI exceeded its authority. . . . *[T]his Bill simply does not break new ground, but merely keeps us on the ground in which we always were.*" (Emphasis added.) 27 H.R. Proc., Pt. 7, 1984 Sess., pp. 2547–48.[5] This history reveals that the purpose of Public Acts 1984, No. 84-276 was to clarify the earlier legislative intent of § 1-19 (b) (2). In light of this conclusion we do not reach the second question posed above, i.e., whether the act was intended to apply retroactively.

"[A] clarifying act, which 'in effect construes and clarifies a prior statute must be accepted as the legis-

---

[5] Further, Representative Dorothy Goodwin stated: "We are not interested in the gossipy concern of newspaper reporters who sometimes seek to do a lot of destructive things in the kinds of reporting they engage [in]. This is a personnel record. It should be protected on the same basis as any personnel record." 27 H.R. Proc., Pt. 8, 1984 Sess., pp. 2943–44.

lative declaration of the meaning of the original act.' " *State* v. *Blasko,* 202 Conn. 541, 557, 522 A.2d 753 (1987); see also *Darak* v. *Darak,* 210 Conn. 462, 471, 556 A.2d 145 (1989). "Where an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect." *State* v. *Magnano,* supra, 284.

Accordingly, we conclude that General Statutes § 10-151c, which specifically exempts from disclosure teacher evaluations and records, is to be applied to affect the FOIC's decisions in this case. Therefore, we vacate the trial court's judgments and remand with direction to sustain the plaintiffs' appeals with respect to the teacher evaluations and records as well as the requested goals and objectives.

## II

The plaintiffs next claim that the trial court erred in concluding that the remainder of the requested documents are public records not exempt from disclosure under § 1-19 (b) (2). These remaining documents include personnel files of all of the noncertified employees as well as the personnel files of the superintendent and board members.

"The plaintiffs must meet a twofold burden of proof to establish the applicability of the § 1-19 (b) (2) exclusion. First, they must establish that the files in question are within the categories of files protected by the exemption, that is, personnel, medical or 'similar' files. Second, they must show that disclosure of the records 'would constitute an invasion of personal privacy.' " *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 431–32, 518 A.2d 49 (1986). Both parties agree that the requested documents are "personnel" files within the meaning of § 1-19 (b) (2). They disagree,

however, over whether disclosure of the requested documents would constitute an invasion of personal privacy.

Although the act does not specifically define "invasion of personal privacy," "the propriety of disclosing information in a personnel file is governed by balancing the need for disclosure 'against the public policy in favor of the confidentiality of private and personal information.' " Id., 433 n.14, quoting *State* v. *Januszewski,* 182 Conn. 142, 172, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). In its findings the FOIC stated that it had balanced the employees' right of privacy against the public's interest in the performance of its employees and concluded that disclosure of the requested documents would not constitute an invasion of personal privacy. In issuing the blanket order that the board was to release the requested documents along with "any other type of document" that evaluates the employees' job performance, the FOIC failed to analyze any specific document with respect to any *individual* employee or even any category of employee.

By failing to examine and analyze properly the competing interests to determine whether the documents in question would constitute an invasion of personal privacy, the FOIC has attempted to have the general rule of disclosure consume its legislatively enacted exceptions. There is a clear difference between the public's interest in a superintendent's evaluation and the evaluation of a school cafeteria worker. Arguably there is also a difference between an individual's privacy interest in a formal evaluation by a supervisor and a person's interest in an unsubstantiated complaint made by an angry coworker. Yet in resolving this case there is nothing in the record to indicate that the FOIC made these distinctions as the plaintiffs requested.

There is error, the judgments are set aside and the case is remanded to the trial court with direction to order the FOIC to carry out the balancing test through an in camera inspection of each of the requested records as well as for consideration of any further evidence the parties may submit.

In this opinion the other justices concurred.