[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION Procedural Background
Plaintiff, East Lyme Board of Education [the "Board"], appeals the final decision of the defendant Freedom of Information Commission [the "FOIC"] ordering the Chairman of the Board to make public a document found by the FOIC to be a "summary of the board's oral evaluation" of defendant Robert Minor, who was then and at the time this appeal was brought, the Superintendent of Schools in the Town of East Lyme [the "Superintendent"].
During the pendency of this appeal a stay of the Commission's order was issued and the document in question was ordered sealed.
On October 4, 1990, the matter was argued before this court and aggrievement was found.
Facts.
The Superintendent of the East Lyme school district had a contract of employment which ran from August 19, 1985 to August 18, 1988. The contract called for an evaluation of the Superintendent within 120 days after the expiration of each year.
The contract also contained a clause which stated "the Superintendent and the Board shall agree upon a recommended format for evaluation and assessment of the Superintendent's performance. The Superintendent and the Board shall meet and discuss an evaluation form and agree on the development of a CT Page 780 mutually agreeable evaluation format." On or about September 9, 1988, the Board compiled notes in typewritten form summarizing an oral evaluation of the Superintendent by the Board. This document was not in a form agreed upon by the parties to the contract and represents the requested record in the case at hand. On October 3, 1988, pursuant to a clause in the contract governing deficient evaluations, the Board appointed a committee which met in executive session with the Superintendent to assist him to improve his performance. The Superintendent continued to negotiate with the Board of Education concerning a mutually agreeable format for his evaluation. On December 19, 1988, the Board of Education held an executive session solely to determine a mutually agreeable format for the Superintendent's evaluation and reached an agreement concerning the proper format.
By complaint filed with the FOIC on November 21, 1988, The Day, a New London newspaper, Lance Johnson, Managing Editor of The Day, and Lynn Bonner, a reporter for The Day [the "Complainants"] alleged that the Chairman of the Board, William M. Grover, denied Miss Bonner access to a written evaluation of the Superintendent. The matter was scheduled for hearing as a contested case on January 5, 1989, at which time the parties appeared and presented evidence and argument before Commissioner Curtis M. Cofield, acting as Hearing Officer. The Hearing Officers report of the January 5, 1989 hearing was transmitted to the parties with a notice that the FOIC would consider the matter at its next regular meeting, on September 27, 1989.
At the September 27, 1989 meeting, the FOIC heard argument and tabled the matter. On October 5, 1989, the Hearing Officer withdrew his report and ordered the Chairman of the Board to produce a certain record for in camera inspection. On October 17, 1989, the Board submitted the requested record for in camera inspection. The Hearing Officer issued a second report, dated October 10, 1989, which was transmitted to the parties with a notice that the FOIC would consider the matter at its November 8, 1989 meeting.
At the November 8, 1989 meeting, the Superintendent was allowed to intervene as a party respondent. Also at that meeting, the FOIC made findings of fact and conclusions of law and ordered the Chairman of the Board to disclose to the Complainants the requested record, which the FOIC determined was a "typed summary of the Board's oral evaluation" of the superintendent, compiled on or about September 9, 1988. The Board appeals the FOIC's final decision and names the FOIC, the Complainants, and the Superintendent as defendants.
Scope of Review CT Page 781
The limited scope of review authorized by law prohibits the court from substituting its judgment for that of the Commission on questions of fact or concerning the weight to be given the evidence. The court is permitted to reverse or modify the decision:
 ". . . . if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Section 4-183(g) Conn. Gen. Stats.
"With regard to questions of fact, it is neither the function of the trial court nor of the [supreme] court `to retry the case or to substitute its judgment for that of the administrative agency.'" Griffin Hospital v. Commission on Hospitals and Health Care, 200 Conn. 489, 496 (1986) (citations omitted). "Judicial review of conclusions of law is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Id. (citations omitted). Although raised in the complaint, issues not briefed are considered abandoned. State v. Ramsundar, 204 Conn. 4, 16 (1987); DeMilo v. West Haven,189 Conn. 671, 681-82 n. 8 (1983).
The burden of proof is upon the plaintiffs/appellants. Lovejoy v. Water Resources Commission, 165 Conn. 224, 230
(1973). This includes the burden of proving the applicability of exemptions to disclosure under the Freedom of Information statutes. Wilson v. FOI Commission, 181 Conn. 324, 341 (1980).
Section 1-19
Section 1-19 of the General Statutes provides, in relevant part, as follows:
 Access to public records. Exempt records. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any CT Page 782 rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office of business hours or to receive a copy of such records . . . .
 (b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of (1) preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure; (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy; . . . .
 (c) Notwithstanding the provisions of subdivision (1) of subsection (b) of this section, disclosure shall be required of (1) interagency or intra-agency memoranda or letters, advisory opinions, recommendations or any report comprising part of the process by which governmental decisions and policies are formulated, except disclosure shall not be required of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among the members of such agency, (2) all records of investigations conducted with respect to any tenement house, lodging house or boarding house as defined in section 19a-355, or any nursing home, home for the aged or rest home, as defined in section 19a-490, by any municipal building department or housing code inspection department, any local or district health department, or any other department charged with the enforcement of ordinances or laws regulating the erection, construction, alteration, maintenance, sanitation, ventilation or occupancy of such buildings, and (3) the names of firms obtaining bid documents from any state agency.
Conn. Gen. Stat. 1-19 (rev'd to 1989) [(c)(1) and (c)(2) added by Conn. Public Act No. 81-431, 1 [1981]]
I. Section 1-19(b)(2) — Personnel File
The Board argues in its brief that the FOIC's decision was based on an error of law. Specifically, the Board claims that the FOIC found the requested record to be a personnel file within the meaning of section 1-19(b)(2), but failed to reach the second step of the analysis applicable under section 1-19(b)(2), which requires the FOIC to determine whether CT Page 783 disclosure of the requested record would constitute an invasion of the Superintendent's personal privacy. The Board does not argue how this determination ought to have been made, however.
In support of its argument, the Board points to the following findings and conclusions of the FOIC:
22. It is found that the requested record is a personnel file within the meaning of 1-19(b)(2), G.S.
23. The Commission notes that superintendents of public schools serve an important function in our society. They are administrators responsible for a system which provides for the education of children and young adults.
24. The Commission notes that public school education in Connecticut commands a significant portion of public funds and is the subject of great and legitimate public interest.
25. The Commission further notes that by virtue of the foregoing, there continues to be a reasonable and legitimate public interest in the records which constitute and document the evaluation of public school superintendents.
26. With respect to the requested record, the Commission therefore finds that the public interest in disclosure clearly outweighs the competing personal privacy interests of the superintendent in avoiding disclosure.
27. It is concluded that the requested record is not exempt pursuant to 1-19(b)(2), G.S.
Of the exception under section 1-19(b)(2), the Connecticut Supreme Court has recently stated:
 "`The plaintiffs must meet a twofold burden of proof to establish the applicability of the 1-19(b)(2) exclusion. First, they must establish that the files in question are within the categories of files protected by the exemption, that is, personnel, medical or `similar' files. Second, they must show that disclosure of the records `would constitute an invasion of personal privacy.' Hartford v. Freedom of Information Commission, 201 Conn. 421, 431-32, 518 A.2d 49 (1986). . . .
 Although the act does not specifically define "invasion of personal privacy," "the propriety of disclosing information in a personnel file is governed by balancing the need for disclosure CT Page 784 `against the public policy in favor of the confidentiality of private and personal information."' Id., 433 n. 14, quoting State v. Januszewski, 182 Conn. 142, 172, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981).
Somers Board of Education v. Freedom of Information Commission, 210 Conn. 590, 595-96 (1989). The FOIC must "examine and analyze properly the competing interests to determine whether [disclosure of] the documents in question would constitute an invasion of personal privacy . . . ." Id. at 596. "The courts of this state require a balancing of the public's right to know with the private need for confidentiality when deciding if the release of information becomes an invasion of personal privacy." Judiciary Committee v. Freedom of Information Commission, 39 Conn. Sup. 176, 182 (1984) (citations omitted).
The Board argues that while Board of Education, Hartford, and Januszewski, cited above, all involve the disclosure of personnel files, they all adopted the balancing test enunciated in Wilson v. Freedom of Information Commission, 189 Conn. 324
(1980), which did not involve section 1-19(b)(2), the exemption for personnel files, but section 1-19(b)(1), the exemption relating to preliminary notes and drafts. However, while Wilson was cited in Januszewski, the citation was not to be a part of Wilson which related solely to section 1-19(b)(1). See Januszewski, 182 Conn. 142, 171 (1980) (citing Wilson,181 Conn. at 328 n. 2). Rather, the court in Januszewski cited a footnote in Wilson where the Wilson court stated that the balancing of competing interests is a permissible and appropriate approach to the interpretation and application of the Freedom of Information Act [the "FOIA"], not just section 1-19(b)(1). See, Id., Wilson, 181 Conn. at 328-29 and n. 2. In a more recent case, the court stated that "the Wilson balancing test applies to the exemptions to 1-19. . . ." Commissioner of Consumer Protection v. FOIC, 207 Conn. 698, 701 (1988) (citing Maher v. Freedom of Information Commission, 192 Conn. 310, 315 (1984)). Furthermore, Hartford and Somers Board of Education cite to that part of Januszewski which sets forth and adopts the balancing test used by other jurisdictions, not that part of Januszewski, which refers to Wilson. See, Somers Board of Education,210 Conn. at 596; Hartford, 201 Conn. at 433 n. 14; Januszewski,182 Conn. at 171-72. The fact also remains that the Connecticut courts view the balancing of competing interests as a way to determine whether an invasion of privacy will occur. See, Somers Board of Education, 210 Conn. at 596; Commissioner of Consumer Protection, 201 Conn. at 701; Judiciary Committee,39 Conn. Sup. at 182.
Even if the court should apply the principles governing the CT Page 785 common law right to privacy in deciding cases under Section 1-19(b)(2), a balancing of compelling public and private interests is required. See, Town of Bloomfield v. Freedom of Information Commission, 4 C.L.T. No. 31, April 26, 1978.
In Board of Pardons v. Freedom of Information Commission,19 Conn. App. 539 (1989), the Appellate Court, noting that section 1-19(b)(2) is "almost identical" to its federal counterpart, found persuasive in a case involving section 1-19(b)(2) the United States Supreme Court's determination that the federal statute was designed to "protec[t] individuals from `the injury and embarrassment that can result from the unnecessary disclosure of personal information."' Board of Pardons, 19 Conn. App. at 544-45 (citing Department of State v. Washington Post Co., 456 U.S. 595, 599, 102 S.Ct. 1957,72 L.Ed.2d 358 (1982)) (Emphasis added). The court in Board of Pardons held that "the records of prisoner applicants for pardons" are exempt from disclosure under section 1-19(b)(2) because, inter alia, of the personal information contained in such records. Id. at 547.
In contrast to Board of Pardons, in the instant case, the FOIC made the following finding in addition to those quoted above:
11. It is found that the requested record contains nothing which pertains to the private life of the superintendent; rather it is an evaluation of specific areas of his performance as superintendent of schools using language similar to that which is employed in evaluating academic performance, and explaining such terms with sentences summarizing board member's opinions.
A review of the requested record shows that this finding is not arbitrary or unreasonable. The requested record contains no information even remotely similar in nature to that contained in the files exempted from disclosure in Board of Pardons. The FOIC's findings are sufficient to support a conclusion that the release of the requested record would not constitute an invasion of privacy. The FOIC found that the requested record contained no information pertaining to the Superintendent's private life, and that the information which it did contain was of legitimate public interest and concern. This conclusion is also supported by section 10-151c of the General Statutes, which specifically exempts from section 1-19 "records of teachers performance and evaluations" but not performance and evaluation records of superintendents. The court finds that the FOIC engaged in a correct analysis under section 1-19 (2).
II. Section 1-19(b)(1) — Preliminary drafts or notes; and Section 1-19(c)(1) — Interagency or intra-agency memoranda CT Page 786
The Board also argues that the FOIC's decision is arbitrary and capricious in that its findings are inconsistent and clearly erroneous in view of the substantive evidence. Specifically, the Board argues that the FOIC's own findings show that the requested record was a preliminary draft or note, and therefore, the FOIC should have reached the balancing test applicable when a record is determined to be a preliminary draft or note under section 1-19(b)(1).
In support of this argument, the Board makes reference to the following findings of the FOIC:
9. It is found that on or about September 9, 1988, the respondent compiled notes in typewritten form, summarizing the oral evaluation of the superintendent by the board.
10. It is found that this typed summary of the board's oral evaluation is the record requested by the complainant.
11. It is found that the requested record contains nothing which pertains to the private life of the superintendent; rather it is an evaluation of specific areas of his performance as superintendent of schools using language similar to that which is employed in evaluating academic performance, and explaining such terms with sentences summarizing board member's opinions.
12. It is found that the notes compiled by the superintendent were not presented in a format which was agreed upon by the superintendent and the board . . . .
15. It is found that, after October 3, 1988, the superintendent continued to negotiate with the board of education concerning a mutually agreeable format for his evaluation.
16. It is found that, on December 19, 1988, the board of education held an executive session solely to determine a mutually agreeable format for the superintendent's evaluation.
17. It is found that, on December 20, 1988, the superintendent mailed forms to members of the board of education for them to sue to evaluate his performance.
18. It is found that the respondent failed to prove that the evaluation of superintendent which was compiled on or about September 9, 1988, was exempt from disclosure within the meaning of 1-19(b)(1), G.S.
20. It is found that the requested record is a memorandum documenting part of the process used by the board of education CT Page 787 to decide what to do about the contract of the superintendent.
The Board argues that the FOIC's description of the requested record as "`part of the process,' `notes . . . summarizing' and/or `opinions,'" and its findings that even after the requested record came into existence, the Board and the Superintendent continued to negotiate a mutually agreeable format for the Superintendent's evaluation are consistent only with a finding that the requested record is "preliminary" within the meaning of section 1-19(b)(1). The Board cites and relies upon Wilson v. Freedom of Information Commission, supra.
However, the FOIC argues that what constitutes a preliminary draft or note is not governed by Wilson because that case was expressly rejected by the legislature when it passedPublic Act 81-431, which is now 1-19(c). The FOIC argues that the requested record is "a memorandum documenting part of the process used by the board to determine whether or not to renew the superintendent's contract" and "[a]s such, . . . is subject to disclosure at Conn. Gen. Stat. 1-19(c)(1) which specifically provides that such a document is not exempt pursuant to Conn. Gen. Stat. 1-19(b)(1) . . . ."
Under section 1-19(b)(1), the disclosure of preliminary drafts is not required "provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure." The Board argues that in applying this test, the FOIC was required but failed to weigh "the public interest in disclosure versus the Board's interest in non-disclosure." None of the statements in the requested record can be traced to any particular Board member. Also, the legislative history ofPublic Act 81-431 shows an intent to open the deliberative process to the public. The responsibility for making the determination that the public interest in withholding such documents clearly outweighs the public interest in disclosure, is on the Board. While the Board argued at the hearing on appeal that to require disclosure of the requested record under these circumstances will have a chilling effect on the Board and will only drive the various steps comprising the evaluation process underground, the Board has not indicated where on the record it offered testimony or other evidence which would have allowed the FOIC to find that the Board concluded in good faith and within its discretion that the public interest in withholding the requested record outweighed the public interest in disclosure. See, New Haven v. Freedom of Information Commission, 205 Conn. 767 (1988); Hartford v. Freedom of Information Commission, supra.
The court finds that even if the FOIC had found that the CT Page 788 document in question was a preliminary draft [which it did not], the balancing test under section 1-19(b)(1) would not be necessary in light of section 1-19(c)(1) which the FOIC found was triggered. The first phrase of section 1-19(c)(1) states: "Notwithstanding the provisions of subdivision (1) of subsection (b) of this section disclosure shall be required . . . ." Thus, even when section 1-19(b)(1) would exempt a record from disclosure, if that record crosses the initial threshold for disclosure under section 1-19(c)(1) and is not then exempted under the second part of section 1-19(c)(1), the record must be disclosed. See, Van Norstrand v. Freedom of Information Commission, 211 Conn. 339 (1989). It should be noted that the Board does not argue that the requested record should have been deemed exempt under the exception contained in section 1-19(c)(1) itself.
The court finds that there is support in the record for the FOIC's finding that the "requested record is a memorandum documenting part of the process used by the Board of Education to decide what to do about the contract of the Superintendent" and thus triggering section 1-19(c)(1). The contract of employment gave the Superintendent thirty days in which to respond to an evaluation and also required the Board to meet with the Superintendent to discuss his evaluation within forty-five days of delivery of the evaluation to him. According to the contract, if the Board evaluated his performance as deficient then the Chairman of the Board must appoint a committee of not less than two members of the Board to meet in executive session with the Superintendent to assist him in improving his performance. The record clearly reflects that the Chairman of the Board told the Complainants that the Superintendent had forty-five days to respond to the requested record and to request a meeting of the Board. Also, the Chairman testified that the committee described above and in the contract was formed to discuss the requested record. Thus, it appears that the requested record was the document which activated several contract provisions concerning the Superintendent's evaluation.
Although the Board argues that since the requested document was not produced according to a mutually agreeable format as per the contract provisions, and thus cannot be called the evaluation, there is certainly sufficient evidence in the record to support a finding under section 1-19(c)(1) that it was a ". . . . report comprising part of the process by which governmental decisions and policies are formulated . . . ."
Conclusion
The court agrees that there is a potential "chilling CT Page 789 effect" by allowing certain information and discussions by board members becoming public. However, a review of the requested document, the record, and the findings of the FOIC compel the court to conclude under its limited scope of review that the action of the FOIC in regard to the requested record was not based on error of law, was not arbitrary and capricious, was not beyond its statutory authority and was not an abuse of discretion and clearly erroneous in view of the substantial evidence.
Accordingly, the appeal is dismissed.
CLIFFORD, J.