[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The first of the above captioned cases involves a dispute between a painting contractor, the plaintiff, TDS Painting 
Restoration, Inc.(TDS), and the defendant, Copper Beach Farm, Inc. (Copper Beach), the owner of approximately 50 acres, including a residential dwelling and outbuildings, as well as a swimming pool and tennis court, located on Long Island Sound in Greenwich. The second of the above cases, in which John M. Rudey CT Page 1721 is the plaintiff, and which was consolidated for trial with the first case, involves an allegation by Rudey that he overpaid TDS and incurred damages as a result of the negligent performance by TDS in 1991 in painting the residential dwelling located on the defendant's property. The principal issues in these cases are whether the painting contract between TDS and Copper Beach is subject to the provisions of General Statutes § 20-418 et seq., the Home Improvement Act (HIA).
In the first count of the revised complaint dated February 17, 1994, in the first case, the plaintiff seeks to foreclose its mechanic's lien, and alleges that, after crediting approximately $98,000 previously received from the defendant, it is still owed a balance of $58,206 for the painting performed at the defendant's request. In its complaint, the plaintiff refers to two written contracts with Copper Beach, dated February 2, 1991, and April 25, 1991, respectively, and to a lease by the defendant Copper Beach of the residential structure to its principal, Rudey. The complaint also contends that the HIA is not applicable "because the property . . . is not used as a private residence, but instead constitutes commercial or business property, within' the meaning of § 20-419 (4)."[1]
The plaintiff also alleges that the defendant Copper Beach acted in "bad faith" in that it refused to pay the plaintiff for the balance due. In the second and third counts of its complaint, the plaintiff alleges that, in addition to the painting work performed pursuant to the contract, it also performed considerable additional painting, pursuant to a verbal request by the defendant, for which it seeks reimbursement under theories of quantum meruit and unjust enrichment, respectively. The plaintiff claims damages, interest and attorney's fees.
Copper Beach filed special defenses claiming that the plaintiff violated the HIA because the plaintiff was not a registered home improvement contractor. These defenses also claimed unsatisfactory and unworkmanlike performance; "unclean hands"; an overbroad mechanic's lien; overpayment; and that the defendant, as lessor of the subject premises, was not responsible for services rendered to its tenant, Rudey. The defendant also filed a four-count counterclaim against the plaintiff alleging breach of contract; negligence; trespass; and violation of the HIA, with a resulting per se violation of General Statutes §42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA). See General Statutes § 20-427 (c). The plaintiff CT Page 1722 denied the material allegations of the special defenses and counterclaim, but did agree that it was not a registered home improvement contractor at the time it contracted with Copper Beach and performed work on its premises.
In the second case, Rudey, who is the principal officer of Copper Beach, and along with his wife the only stockholders thereof, essentially repeated the allegations of the special defenses and counterclaim asserted in Copper Beach's defense to the first case. The complaint alleges breach of contract, negligent misrepresentation, negligent performance, and violations of HIA and CUTPA. The plaintiff sought damages for contaminated soil surrounding the demised premises as an alleged result of TDS' negligent removing of paint from the residential structure.
This case was referred to Attorney David M. Cohen, an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 428 et seq. The referee conducted a trial and then filed his report containing the following findings of fact: (1) that the plaintiff's contract was with "Mr. John Rudy [sic]- Copper Beach Farms, Inc." and that Rudey did not sign the contract in a corporate capacity with words such as president or other officer; (2) that the insurance certificate procured by the plaintiff named Copper Beach as the certificate holder; (3) that the original contract was based on time and material, and the supplemental contract was again based on time and material, but with a cap containing a 10% variable, and a reference to an estimated additional 2,500 man hours at $25 per hour, and extras of approximately $62,000; (4) that at Rudey's instructions the plaintiff sent its invoices to him, but they were billed to and paid by Copper Beach's corporate checks in the approximate amount of $98,000; (5) that the last payment by the defendant Copper Beach was on July 26, 1991, at which time Copper Beach claimed that the plaintiff had caused extensive damage to the premises by reason of lead contamination of the soil and some damage to the shrubs; (6) that the contract also provided that work areas were to be covered thoroughly and would be cleaned up each day; (7) that the plaintiff satisfactorily performed the painting services it had contracted to perform, including the extras ordered by the defendant; (8) that the plaintiff was not a licensed home improvement contractor; (9) that 40 of the 50 acres were classified as "forest land," although no trees were ever harvested and there were no significant revenues; (10) that in December, 1982, Copper Beach CT Page 1723 as lessor and Rudey as lessee executed a ten year lease for the residential dwelling to be used "as a living place for John M. Rudey and Family", the rent was $10,000 per year for the first two years and $20,000 per year thereafter, with lessee to pay all maintenance and repair expenses of not less than $15,000.00 per year; (11) that the residential structure in question is very large, "stately," with a grandeur similar to many hotels; (12) that Rudey used the premises as a summer home and occasionally on weekends; (13) that Copper Beach did not depreciate the residence on its corporate tax returns, derived no tax or other benefit from its lease to Rudey, and did not "treat the main residence . . . as a profit-making asset"; (14) that the paint removal from the main residence was a "substantial source for the high lead levels discovered in the testing"; and (15) that plaintiff made "extensive efforts" to contain the paint chips by the use of tarpaulins and performed regular clean up.
The attorney trial referee reached the following conclusions as a result of his findings of fact: (1) that the contract did not conform to General Statutes § 20-429 of HIA, because there were no start or completion dates or notice of right of cancellation; (2) that the plaintiff had not proved bad faith on the part of Copper Beach and/or Rudey, as the failure to pay the plaintiff was based on a genuine dispute as to damages to the subject premises; (3) that Copper Beach's property was used for a "commercial venture," although it never made a profit, and that the lease represented a corporate benefit to Copper Beach's president and sole stockholders; (4) that the lease between Copper Beach and Rudey was not an "arms' length or market transaction" and the rent was used to reimburse Copper Beach for some of its costs associated with Rudey's occupancy; (5) that Rudey was an agent of the corporation, Copper Beach; (6) that the structure that the plaintiff painted was a "private residence" and that the plaintiff's painting services constituted a home improvement under the HIA; (7) that the HIA was inapplicable to the painting contract because of the exemption for commercial or business use contained in General Statutes § 20-419 (4)(C); (8) that no CUTPA damages were warranted because the HIA was not applicable (9) that there was no proof that the plaintiff either deviated from acceptable industry standards in removing paint from the residence, or failed to use reasonable measures to control the paint dust; (10) that both the defendant Copper Beach in its counterclaim, and Rudey as plaintiff in the second action, failed to prove either that they were overbilled by the plaintiff, or that the plaintiff was responsible for the high CT Page 1724 lead content in the soil surrounding the house in question; and (11) the plaintiff was entitled to recover $23,969.71, as a balance due under the contract with Copper Beach, and $33,925 as "extras" ordered by Copper Beach outside or apart from the contract, for a total of $57,894.71, plus attorney's fees of $83,910.
The defendants, referring to both Copper Beach and Rudey, pursuant to Practice Book § 438, moved to correct the report to reflect that: (1) both the first and second contracts were signed by Rudey in his individual capacity and that Rudey was not an agent nor could he bind Copper Beach; (2) Copper Beach did not deduct expenses associated with the residence on its own corporate tax return, and did not depreciate the residence which was treated separately on the corporate books from the remainder of the property; (3) Rudey paid for the painting by reimbursing Copper Beach for the money it paid to the plaintiff; (4) the structure that was painted by the plaintiff is a single-family residence and Copper Beach did not attempt to derive a profit from the lease to Rudey; and (5) the plaintiff negligently dumped paint scrapings and dust on the lawn and failed to adequately cover and protect the area.
In his response to the defendants' motion to correct, the attorney trial referee declined to make any change in his recommendation that judgment should enter for the plaintiff, except for one change to reflect that of the $58,000 sought by the plaintiff, $28,000 represented a balance due under the written contracts, while $30,000 was performed at the verbal request of Rudey and constitutes extras outside the scope of the contract.
The defendants filed exceptions to the referee's report pursuant to Practice Book § 439, and properly included the required transcript of the evidence that was introduced at the trial. The exceptions contend that the referee erred in refusing to correct his report in accordance with the changes proposed by the defendants in their motion to correct.
The defendants also filed objections to the acceptance of the referee's report, Practice Book § 440, in which they reiterate their contentions that the referee had erred in determining that the commercial or business exception to the HIA existed, thus permitting recovery by the plaintiff; that the painting contract was with Copper Beach and not Rudey CT Page 1725 individually; and that the plaintiff is liable for lead contaminates in the soil adjacent to the residence.
As to this court's scope of review of an attorney trial referee's recommendations regarding the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Enfield,210 Conn. 705, 714, 557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716; see also Practice Book § 440. It appears, however, that the facts in this case are really not in dispute except in connection with the counterclaim and action by Rudy as plaintiff for alleged damage to the premises caused by negligence on the part of the plaintiff.
In addition to determining whether "there was . . . evidence to support the attorney trial referee's factual findings," the task of the reviewing court is to decide whether "the conclusions reached were in accordance with the applicable law." Thermoglaze.Inc. v. Morningside Gardens, Co., 23 Conn. App. 741, 746,583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991); see also Practice Book § 440 and Bernard v. Gershman, 18 Conn. App. 652,656, 559 A.2d 1171 (1989)("[w]here legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the referee").
The issues in this case have been framed by the referee's conclusions that: (1) the plaintiff's contract was with Copper Beach, not Rudey, and therefore that the plaintiff sued the right party; (2) that the plaintiff did not prove that the defendant acted in bad faith, an exception to the provision in HIA prohibiting recovery by an unlicensed home improvement contractor; (3) that the plaintiff is entitled to recover from the defendant in that the painting it performed did not constitute a home improvement because of its commercial or business nature; and (4) that the defendant Copper Beach in its counterclaim, and Rudey in his complaint in the second case, had failed to prove that the plaintiff was negligent in its painting work in terms of causing lead paint poisoning to the soil CT Page 1726 adjacent to the residential structure.
The first issue concerns whether the plaintiff sued the correct defendant. There are good arguments that the proper defendant was Rudey individually, not Copper Beach, since he did not sign the contract in a corporate capacity as he had in another previous contract. On the other hand, the structure that was painted belonged to Copper Beach and the plaintiff was paid by Copper Beach. The plaintiff's principal officer, Donald Freitag, testified that he was "looking to" the corporation for payment. Thus, the conclusion that Copper Beach was the contracting party and hence a proper defendant is not illogical and is accepted. Moreover, the issue is actually moot in view of the ruling on the commercial/business exception in the HIA.
It is clear that the work performed by the plaintiff constitutes a home improvement as defined in General Statutes § 20-419 (4), and it is equally clear that the plaintiff was not a certified or registered home improvement contractor, and hence did not comply with the HIA, General Statutes § 20-420. Therefore, the issue in the first case is whether the plaintiff may recover from the defendant Copper Beach by bringing itself within either the "bad faith" exception of Habetz v. Condon,224 Conn. 231, 236-40, 618 A.2d 506 (1992), or the "commercial or business use" exception referred to in General Statutes §20-419 (4).
The first exception requires a plaintiff to establish "that the [defendant's] invocation of the HIA as a basis for [his] repudiation of the contract was in bad faith." Rizzo Pool Co. v.Del Grosso, 232 Conn. 666, 680, 657 A.2d 1087 (1995). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." (citations omitted; internal quotation marks omitted.) Habetz v. Condon, supra,224 Conn. 237; see also Rizzo Pool Co. v. Del Grosso, Id.
The facts as found by the referee lead legally and logically to his conclusion that the defendant did not exhibit the bad faith required to excuse or negate a violation of the HIA. The only real argument asserted by the plaintiff is that the defendant refused to pay the balance of its bill, but the referee CT Page 1727 pointed out that the defendant had asserted faulty performance of the contract on the part of the plaintiff.
Therefore, the plaintiff cannot recover on the bad faith exception because it is limited to "instances of bad faith relating to the formation of, or inducement to, enter into a home improvement contract" and even possibly an "unwarranted" or an "improper termination or repudiation of the agreement." Dinnis v.Roberts, 35 Conn. App. 253, 257, 644 A.2d 971 (1994). The alleged bad faith in this case falls far short, of the proof required to invoke this exception, and thus the referee's conclusion that the plaintiff did not prove bad faith on the part of Copper Beach is accepted.
The next issue involves the so-called "commercial exception" to the HIA found in General Statutes § 20-419 (4). Accepting the referee's factual findings, his conclusion that this was a commercial transaction seems unwarranted. "A referee's determinations of law in his or her report are not binding on the court . . . the trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee . . . [t]he trial court [has] the inherent authority . . . to render whatever judgment was appropriate in light of the facts found by the attorney trial referee." (citations omitted; internal quotation marks omitted.)Dills v. Enfield, supra, 210 Conn. 713; see also State Bank ofWestchester v. New Dimension Homes of Connecticut, Inc., 38 Conn. App. 491,497, 661 A.2d 119 (1995) (stating "[a]ny legal conclusions reached by an attorney trial referee have no conclusive effect").
The plaintiff painted a single-family, private residential structure in which Rudey and his family and no one else resided. The lease stated, as the referee noted, that the premises were to be used "as a living place" for Rudey and his family. The fact that 40 acres are classified as a "tree farm" may be significant to the town's tax assessor, but the referee found that the sales of trees and profit therefrom was negligible. The lease could not have been profit motivated as this mansion, located on 50 acres on Long Island Sound, was rented for only $10,000 and then $20,000 a year. Moreover, the accountant for Copper Beach, Mr. Friedman testified in his deposition that the corporation's motive for renting the residence to its principal stockholder and officer was not for profit. CT Page 1728
Also, the defendants' argument that the 1993 amendment, Public Act 93-125, expanding the definition of a home improvement to include work performed on residential rental property is retroactive because it clarifies existing law is persuasive. "[A] clarifying act, which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act . . . Where an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect." (Internal citations and quotation marks omitted). Board of Education v. FOIC, 210 Conn. 590,594-95, 556 A.2d 592 (1989). It is clear from the legislative history that the definition of home improvement was a clarification, not a change to existing law. Representative Stratton stated: "This amendment is designed to clarify the language that exists in the Home Improvement Act . . . work done on a residential property that is rented . . . is not excluded from the home improvement definition. Also, . . . by hiring someone to come in an [sic] work on such a residential property does not exclude you and that the fact that receiving income for a rental property does not thereby make it a commercial venture and excluded if it falls within the six unit definition. It really, in my opinion, is an amendment that really absolutely makes clear what was already clear in the existing law." 36 H.R. Proc., Pt. 16, 1993 Sess., p. 5613-14.
Therefore, the contracts fell within the HIA. Since they did not satisfy the HIA's requirements, the plaintiff TDS cannot recover.
Regarding the counterclaim filed by Copper Beach, which is also the substance of the suit by Rudey in the second action, the referee's conclusion was based on credible evidence that the plaintiff was not negligent in its treatment of paint chips and dust. The conclusion that these defendants failed to prove that the plaintiff acted negligently follows legally and logically from his findings of fact that the plaintiff took proper precautions.[2] Therefore, this conclusion should not be overturned.
Accordingly, judgment is entered in favor of the defendant Copper Beach with respect to the plaintiff TDS' complaint in the first case, and in favor of TDS both with regard to the defendant's counterclaim in the first case, as well as in the second action brought by Rudey individually. No costs shall be taxed in favor of either party. CT Page 1729
So Ordered.
Dated at Stamford, Connecticut, this 4 day of March, 1996.
William B. Lewis, Judge