[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These are consolidated administrative appeals by the plaintiff, Department of Public Utilities, City of Norwich and the City of Norwich ("NDPU"), from final decisions of the Freedom of Information Commission ("FOIC") rendered on the complaints of Joseph Cassidy and Robert Bourne.
FOIC made the following findings of fact[1] that apply to both cases:
1. NDPU is a public agency, a municipal utility furnishing gas, electric, water and sewer services.
2. On May 19, 1998, in separate letters, Cassidy and Bourne requested that NDPU provide them with access to inspect records of NDPU.[2]
3. On May 26, 1998, NDPU requested that Cassidy and Bourne clarify the scope of their requests.
4. On June 22, 1998, Cassidy and NDPU discussed the request, agreed that Cassidy would be permitted to inspect certain records, and that NDPU would send Cassidy a letter describing the records which NDPU would not make available.
5. On July 10, 1998, NDPU provided Cassidy with a description of categories of records which would not be made available, and on July 27, 1998, informed Cassidy that certain records would be made available for his inspection. CT Page 768
6. Following further discussion between Cassidy and NDPU, on September 16, 1998, it was agreed that Cassidy or his designee[3] would be permitted to inspect some of NDPU's records on September 23, 1998.
7. On September 23, 1998, Bourne on behalf of his own request and as Cassidy's designee, inspected the records made available to him by NDPU. After this September 23rd inspection, Bourne and Cassidy concluded that their request for the documents had been denied.[4]
8. Both Bourne and Cassidy then appealed on September 30, 1998, to FOIC alleging that NDPU had violated the Freedom of Information Act by denying them access to the requested records.
9. FOIC rejected NDPU's contention that the July 10, 1998 letter was a denial of the right to inspect records. FOIC concluded that there were discussions of the parties between late May and September 16, 1998, culminating in the agreement to view records on September 23, 1998. Cassidy and Bourne's appeal period began on September 23rd and was met by the appeal to FOIC on September 30, 1998.
10. Hearings were held on four dates in 1999 in this matter. At the hearing of June 17, 1999, the parties agreed that in lieu of FOIC taking evidence regarding voluminous documents, the parties would stipulate to having 84 documents received in camera by FOIC. The parties were to await the ruling on these documents by FOIC and if some or all of these documents were ordered disclosed, the disclosure of the remaining documents would be settled by binding arbitration.
11. In keeping with the stipulation, NDPU submitted 84 records to FOIC in camera and FOIC did review these records.[5]
12. FOIC concluded that General Statutes § 7-232a, exempting from disclosure a municipal utility's "commercially valuable, confidential or proprietary information" was not in effect on October 1, 1998, nor that the statute had any retroactive effect. Hence this statute was inapplicable to the requests made here.
13. As to NDPU's claim for exemption under General Statutes § 1-210
(b)(5), FOIC concluded that the records were not "trade secrets," but were "commercial or financial information . . . not required by statute. . . ." FOIC found, however, that NDPU had failed to meet its burden of proof that the 84 records were "given in confidence," except for two documents, Numbers 18 and 48.
14. FOIC therefore ultimately concluded that Cassidy and Bourne were CT Page 769 entitled to receive the in camera documents, except for the two documents where the exemption was satisfied.
15. FOIC found five documents non-disclosable under the attorney-client privileged communications exemption. General Statutes § 1-210 (b) (10).
16. NDPU sought an exclusion for several documents under General Statutes § 16-262c, a non-disclosure provision for utility records regarding individual customers "to the extent that such disclosure would constitute an invasion of privacy."
17. FOIC concluded that some of the in camera documents or parts thereof could lead to identification of the utility usage or billing information of individual customers and would constitute an invasion of privacy. Therefore, these documents or parts of documents were exempt from disclosure.[6]
FOIC thus concluded that Cassidy and Bourne should have access to all documents not found exempt under the Freedom of Information Act and in keeping with the stipulation of the parties. NDPU has now appealed from these final decisions.[7] In deciding this appeal, the court is subject to the following well-known standards:
"We review the issues raised by the [commission] in accordance with the limited scope of judicial review afforded by the [Uniform Administrative Procedure Act]. . . . The scope of permissible review is governed by § 4-183 (j) and is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant. . . . The conclusion reached by the defendant must be upheld if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citations omitted; internal quotation marks omitted).Domestic Violence Services of Greater New Haven, Inc. v. FOIC,47 Conn. App. 466, 469-70 (1998).
The first issue raised by NDPU is that both Cassidy and Bourne were untimely in their appeals. Section 1-206 (b)(1) of General Statutes provides that: "Any person denied the right to inspect or copy records . . . may appeal therefrom to the Freedom of Information Commission, by filing a notice of appeal with said commission . . . within thirty days after such denial. . . ." As to Cassidy, NDPU contends that he knew as of CT Page 770 July 10, 1998, that the requested records had been denied and that the viewing of records on September 23, 1998, was unrelated to the requested records. NDPU contends that the denial of records therefore occurred on July 10, 1998, making the September 30, 1998 appeal to FOIC out of time. It also contends that if the July 10th letter was not a denial, then there was never a new request to which a new denial attached.
FOIC concluded that there were on-going negotiations between NDPU and Cassidy from May to September 16, 1998, that the July 10th letter was given in the context of these negotiations and that factually a new request and a denial occurred after Bourne's inspection of the records on September 23rd. There is sufficient evidence in the record to support the conclusion of FOIC. (See ROR, Volume 2, Item 21, p. 239; Volume 2, Item 21, p. 243 (conversations between Cassidy and Koontz regarding viewing certain records)); Volume 3, Item 24, p. 450.)
NDPU's contention as to Bourne is that he never took any steps after he received a letter of May 26, 1998, apparently denying his requests. FOIC concluded that Bourne's request was subsumed in the negotiations by Cassidy and that Bourne was awaiting a response from NDPU. The record supports the conclusions of FOIC. (ROR, Volume 2, Item 20, p. 209; Volume 2, Item 21, pp. 239-41.)
The Connecticut Supreme Court has cautioned that in deciding whether a timely appeal has been taken from a denial, "[w]e decline to engraft a judicial amendment upon the statute that would frustrate the `strong legislative policy in favor of the open conduct of government and free public access to governmental records." Board of Education v. Freedom ofInformation Commission, 208 Conn. 442, 451 (1988), quoting Wilson v.Freedom of Information Commission, 181 Conn. 324, 328 (1980). The intent of the statute is to encourage good faith negotiations about requests for disclosure and purported denials. West Hartford v. Freedom of InformationCommission, 218 Conn. 256, 261 (1991). The court concludes therefore that substantial evidence supports FOIC's conclusion that both Cassidy's and Bourne's appeals were timely.
NDPU secondly raises the exemption of General Statutes § 1-210 (b) (5), which provides as follows:
Nothing in the Freedom of Information Act shall be construed to require disclosure of: . . . (5) Trade secrets, which for purposes of the Freedom of Information Act, are defined as unpatented, secret, commercially valuable plans, appliances, formulas or processes, which are used for the making, preparing, compounding, treating or processing of articles or CT Page 771 materials which are trade commodities obtained from a person and which are recognized by law as confidential, and commercial or financial information given in confidence, not required by statute.
While it has not been decided in Connecticut, reference to the Federal Freedom of Information Act[8] shows that General Statutes § 1-210
(b)(5) contains two separate exemptions. The first is a "trade secret" exemption. The second involves "commercial or financial information."National Parks and Conservation Ass'n v. Morton, 498 F.2d 765 (D.C. Cir. 1974); American Air Lines v. National Mediation Board, 588 F.2d 863, 868
(1978); Northwest Coalition for Alternatives to Pesticides v. Browner,941 F. Sup. 197 (D.D.C. 1996). In order to bring a matter within General Statutes § 1-210 (b)(5) exemption other than a trade secret, the information must be (a) commercial or financial, (b) given in confidence and (c) not required by statute. Cf. National Parks and ConservationAss'n v. Morton, supra, 498 F.2d 766.
As indicated above, FOIC made a specific finding that the first part of exemption § 1-210 (b)(5) was not at issue in this case, FOIC concluded after reviewing the in camera documents that these documents were not "plans, appliances, formulas or processes."[9] FOIC did, however, decide to evaluate the in camera records under the "commercial or financial information" exception.
The court cannot find any error in the decision by FOIC to analyze whether the records were exempt under the second part of the exception, as opposed to the first. As the Appellate Court stated in Presnick v.Freedom of Information Commission, 53 Conn. App. 162, 164 (1999):
 We are required to defer to the subordinate facts found by the commission, if there is substantial evidence to support those findings. . . . We look to see if the trial court reviewing the commission's findings acted unreasonably, illegally, or in abuse of discretion. . . . Conclusions of law reached by the commission must stand if they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Neither we, nor the trial court, may retry the case nor substitute our own judgment for that of the commission. . . .
(Brackets omitted; citations omitted, internal quotation marks omitted)
NDPU contends that FOIC failed to look to the evidence it introduced CT Page 772 regarding trade secrets, and that FOIC failed to use the test for trade secrets set forth in Department of Public Utilities v. Freedom ofInformation Commission, 55 Conn. App. 527 (1999). It was unnecessary for FOIC to make use of this analysis once it properly determined that the records here did not involve trade secrets. It should also be pointed out that the document at issue in Department of Public Utilities was described by the Appellate Court as "a fifteen to twenty page document that reflects a specific formula to allocate costs to deliver a volume of product at a determined rate." (Emphasis added.) Id., 529. In contrast, based upon this record, FOIC concluded that the documents at issue did not meet the definition of "trade secrets" set forth in the exemption.
Since FOIC decide to apply the second part of exemption five, FOIC was obliged to evaluate the evidence of record to see if the in camera documents were "given in confidence."[10] The phrase "given in confidence," similar to the phrase in the federal law, "obtained from a person and . . . confidential," focuses on the person who provides the information.[11] As Judge Schuman remarked in Chief of Staff v. Freedomof Information Commission, Superior Court, judicial district of New Britain, Docket No. 492654 (August 12, 1999, Schuman, J.) (25 Conn.L.Rptr. 270) the phrase refers to "a person who provides information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred. . . ." (Citations omitted; internal quotation marks omitted.) He relies upon the case ofUnited Technologies Corporation v. NLRB, 777 F.2d 90, 93 (2d Cir. 1985). See also Allnet Communications Services, Inc. v. FCC, 800 F. Sup. 984,988 (D.D.C. 1992) (for the similar interpretation under federal FOIA.)
Here, FOIC concluded that the documents were not given in confidence. The only testimony supporting such a claim was that of DesRoches, an employee of NDPU. He testified that he had not actually reviewed the requested records before the decision was made by NDPU to refuse access to them. (ROR, Volume 3, Item 23, p. 408.)
The court has benefitted [benefited] from the list submitted by NDPU (see supra footnote 5) setting forth documents claimed subject to the section 5 exemption with references to the record and has reviewed these references. The vast majority of the documents on this list were developed by NDPU itself and while DesRoches testified as to commercial value of these documents, there was no showing that they were "given in confidence."[12] The testimony of DesRoches on these documents may be found in ROR, Volume 2, Item 21, pp. 213-32; Volume 2, Item 22, pp. 293-344. Just by way of example, document #2 "relates to marketing data for large customers."[13] DesRoches' testimony indicates that the document was developed by NDPU. (ROR, Volume 2, Item 22, p. 297.) Document #6 is "internal Norwich DPU correspondence relating to customer CT Page 773 billing data." It was developed by a NDPU engineer. (ROR, Volume 2, Item 22, p. 302.) DesRoches "believed" that some of the data was given to NDPU in confidence. (ROR, Volume 2, Item 22, p. 303.) Document #15 is "gas supply invoices identifying the Norwich DPU's suppliers, its gas usage and its costs of supply for April 1999." Document #27 is "a competitive bid proposal for a large customer, and includes information relating to customer identification, gas facilities, usage and pricing." Document #58 is a "diagram of a customer supply system." Document #88 "describes the operation of a gas pipeline delivery system for the Mashantucket Pequot Tribe."
Even in those instances where the list indicates that materials were "given" to NDPU, there is no proof that any express or implied agreement had been developed between NDPU and the tenderer of the document. For example Document #60 "relates to customer meetings and data. It contains a description of plans for delivery of gas and electricity to the Mohegan Sun Resort, and compliance with environmental standards. To the extent that the tribe and consultants had provided this information, it was claimed "privileged," not "confidential." (ROR, Volume 2, Item 21, p. 218.) FOIC did allow parts of the document to be exempt under another statutory provision, but not under section 5. Document #76 "contains letters and a memo between the Norwich DPU and the Mohegan Tribe." There is no evidence of the letters being "given in confidence." (ROR, Volume 2, Item 21, p. 224.)
NDPU also refers in its October 20, 2000 filing to testimony of the general counsel for the Mohegan Tribe and the tribal attorney for the Mashantucket Pequot Tribal Nation. (ROR, Volume 2, Item 22, pp. 262-74.) Neither of these witnesses had any personal knowledge that the documents at issue were given in confidence. Based on its review of the record, the court concludes that there is sufficient evidence support FOIC's conclusions regarding exemption five.
NDPU also claims that § 7-232a serves to exempt disclosure of commercially valuable, confidential or proprietary information. This statute does not apply to the Cassidy and Bourne requests, which were made before October 1, 1998, the effective date of the statute. FOIC found that § 7-232a did not apply retroactively. The court agrees with FOIC. A new public act is generally applied prospectively, unless it merely clarifies a prior enactment or the specific intent of the legislature shows that it is to be applied retroactively. GeneralAccident Ins. Co. v. Powers, Bolles, Houlihan Hartline, Inc.,50 Conn. App. 701, 714 (1998), aff'd, 251 Conn. 56 (1999). As in GeneralAccident, "[t]here is no indication in the language of [the public act], its legislative history, or the surrounding circumstances that the legislature intended the act to clarify the existing law."[14]
CT Page 774
Board of Education v. Freedom of Information Commission, 210 Conn. 590
(1989) is not applicable here.[15] In Board of Education, the court reviewed the legislative history and found the specific statement of a legislature that the intent of the proposed legislation was to modify an FOIC decision making teacher evaluations available, when prior law had never allowed such access. Here, to the contrary every indication in the legislative history is that this is a new enactment, with no intent to clarify any prior holding.
Finally NDPU raises the claim that General Statute § 16-262c (e) applies to the in camera documents identified by NDPU. This statute provides as follows:
 No provision of the Freedom of Information Act . . . shall be construed to require or permit a municipal utility furnishing electric, gas or water service . . . to disclose records under the Freedom of Information Act . . . which identify or could lead to identification of the utility usage or billing information of individual customers, to the extent such disclosure would constitute an invasion of privacy.
FOIC has relied on the evidence of record[16] and reviewed these specific documents and found that certain documents or parts of documents should not be made available to Cassidy and Bourne. (ROR, Volume 4, Item 31, p. 682; Volume 4, Item 32, p. 692.) Again the court must defer to the review effort of FOIC in reaching its ultimate conclusion. NDPU is not contending that FOIC made the wrong decision as it reviewed page by page, only that § 16-262c (e) mandates each document to be fully exempt. (Brief of the Department of Public Utilities, City of Norwich and City of Norwich, Docket No. 99-0498511, p. 23.)
Under the substantial evidence test, the court cannot substitute its judgment for the decision of FOIC in allowing disclosure of records and disallowing others alleged to be subject to the § 16-262c (e) statutory exemption. New Haven v. Freedom of Information Commission,205 Conn. 767, 777 (1988); Dolgner v. Alander, 237 Conn. 272, 281 (1996) (substantial evidence rule imposes important limitation on power of courts to overturn decision of administrative agency).
The appeal is therefore dismissed.
Henry S. Cohn, Judge CT Page 775