CHAIRMAN, CRIMINAL JUSTICE COMMISSION, ET AL. v.
FREEDOM OF INFORMATION COMMISSION ET AL.
(13989)

PETERS, C. J., SHEA, COVELLO, HULL and BORDEN, Js.

---

Argued November 8, 1990—decision released January 22, 1991

*Constance L. Chambers,* assistant general counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellant (named defendant).

*Laurie Adler,* assistant attorney general, with whom were *John A. Connelly,* state's attorney, and, on the brief, *Charles A. Overend,* assistant attorney general, and *Diane D. Duhamel,* former assistant attorney general, for the appellees (plaintiffs).

COVELLO, J. This is an administrative appeal from a decision of the defendant Freedom of Information Commission (FOIC) ordering the plaintiff chairman of the criminal justice commission (chairman) to disclose the merit and performance evaluation prepared for the plaintiff Waterbury's state's attorney John A. Connelly, by the chief state's attorney pursuant to General Statutes § 51-280. The dispositive issue is whether a personnel evaluation of a state's attorney is exempt from the disclosure requirements of the Freedom of Infor-

mation Act (FOIA) by reason of General Statutes § 1-19 (b) (2).[1] We conclude that § 1-19 (b) (2) exempts the evaluation from disclosure and, therefore, affirm the judgment of the trial court.

On June 23, 1988, Rhonda Stearley, Chris Powell and the Journal Inquirer requested that the chairman supply them with a copy of the merit and performance evaluation of Connelly. The chairman denied their request. On July 7, 1988, Stearley, Powell and the Journal Inquirer filed a complaint with the FOIC seeking disclosure of the evaluation report. On August 25, 1988, the FOIC conducted a hearing at which the criminal justice commission (commission) presented expert testimony that the evaluation report is considered a sensitive document and is maintained only in a limited access personnel file. On December 8, 1988, the FOIC ordered the chairman to disclose Connelly's evaluation report. The plaintiffs appealed the decision of the FOIC to the Superior Court pursuant to General Statutes § 4-183.

On June 1, 1989, the trial court, *Allen, J.,* remanded the matter to the FOIC for an in camera inspection and to perform the balancing test described in *Board of Education* v. *Freedom of Information Commission,* 210 Conn. 590, 556 A.2d 592 (1989). On June 20, 1989, the FOIC conducted an in camera inspection. Following this inspection, the FOIC found that the evaluation was part of a personnel file within the meaning of § 1-19 (b) (2). The FOIC concluded, however, that as a public official, Connelly had a minimal expectation of privacy in records relating to his official conduct and that his minimal privacy rights were outweighed by the

[1] General Statutes § 1-19 (b) (2) provides: "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy."

public interest in the information. On July 14, 1989, the FOIC issued its second decision again ordering the chairman to release the commission's evaluation.

On April 16 and 18, 1990, the plaintiffs appealed the second FOIC ruling to the Superior Court. The trial court, *Leuba, J.,* sustained their appeal, concluding that disclosure of the evaluation constituted an invasion of privacy within the meaning of § 1-19 (b) (2) as a matter of law. The defendants appealed to the Appellate Court. We thereafter transferred the matter to this court pursuant to Practice Book § 4023.

The FOIA "makes disclosure of public records the statutory norm." *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 430, 518 A.2d 49 (1986). Section 1-19 (b) (2), however, provides an exception that prohibits the disclosure of "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." "The plaintiffs must meet a twofold burden of proof to establish the applicability of the § 1-19 (b) (2) exclusion. First, they must establish that the files in question are within the categories of files protected by the exemption, that is, personnel, medical or 'similar' files. Second, they must show that disclosure of the records 'would constitute an invasion of personal privacy.' " Id., 431–32. The burden of proving the applicability of an exemption rests on the party claiming it. *Maher* v. *Freedom of Information Commission,* 192 Conn. 310, 315, 472 A.2d 321 (1984).

In this case, the FOIC determined that the evaluation is a personnel or similar file within the meaning of § 1-19 (b) (2). The FOIC, however, relying upon federal first amendment law, concluded that a state's attorney, as a public official, has "minimal or nonexistent" privacy rights in information related to his official conduct. See *New York Times Co.* v. *Sullivan,* 376

U.S. 254, 270, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). The FOIC then balanced the public's interest in the information contained in the report against Connelly's limited privacy rights and concluded that the public's interest in the evaluation report outweighed any privacy rights retained by Connelly. The Superior Court concluded, however, that, based upon the predicate findings of the FOIC, disclosure of the report constituted an invasion of privacy as a matter of law.

What constitutes an invasion of privacy for the purposes of § 1-19 (b) (2) is not articulated in the FOIA. "Although our Freedom of Information Act does not derive from any model act or the federal Freedom of Information Act, other similar acts, because they are in pari materia, are interpretively helpful, especially in understanding the necessary accommodation of the competing interests involved." *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 333, 435 A.2d 353 (1980); see also *Hartford* v. *Freedom of Information Commission,* supra, 432.

The privacy exemption contained in the federal Freedom of Information Act, 5 U.S.C. § 552 (b) (6),[2] is "nearly identical" to the exemption in § 1-19 (b) (2). *Hartford* v. *Freedom of Information Commission,* supra. In construing the federal provision, the United States Supreme Court has determined that the federal privacy exemption was designed to protect individuals from "the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Department of State* v. *Washington Post Co.,* 456 U.S. 595, 599, 102 S. Ct. 1957, 72 L. Ed. 2d 358 (1982); *Stern* v. *F.B.I.,* 737 F.2d 84, 91 (D.C. Cir. 1984); *Camp-*

---

[2] Title 5 of the United States Code, § 552 (b) (6) provides: "This section does not apply to matters that are . . . (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

_bell_ v. _United States Civil Service Commission,_ 539 F.2d 58, 61 (10th Cir. 1976). In addition to the potential for embarrassment, another factor federal courts have considered important is whether the individual originally gave the information to the government agency with the reasonable expectation that the material would be considered private. _Rural Housing Alliance_ v. _United States Department of Agriculture,_ 498 F.2d 73, 77–78 (D.C. Cir. 1974); see also _Judiciary Committee_ v. _Freedom of Information Commission,_ 39 Conn. Sup. 176, 188, 473 A.2d 1248 (1983).

In line with the approach taken by the federal courts, Connecticut courts have considered a person's reasonable expectation of privacy and the potential for embarrassment as significant factors in determining if disclosure would constitute an invasion of privacy. _Galvin_ v. _Freedom of Information Commission,_ 201 Conn. 448, 461, 518 A.2d 64 (1986); _Judiciary Committee_ v. _Freedom of Information Commission,_ supra. The FOIC, however, concluded that, based upon first amendment precepts, a public official such as a state's attorney has "minimal or nonexistent" rights of privacy. We disagree.

We have recently held that "the FOIA's general policy favoring public access has strong federal constitutional underpinnings. As the United States Supreme Court has made clear, the first amendment to the federal constitution is not limited to protection of free expression but also embodies the right to receive and gain access to information and ideas." _Lieberman_ v. _Board of Labor Relations,_ 216 Conn. 253, 267, 579 A.2d 505 (1990). The fact that the FOIA implicates first amendment concerns of access to information, however, does not necessarily imply that first amendment constraints on the personal privacy rights of public figures control the application of statutory privacy

exemptions under the FOIA. It cannot be assumed that constitutional precepts that have evolved in the context of civil libel proceedings determine the extent of privacy rights in the entirely different context of the FOIA. Indeed, contrary to the conclusion reached by the FOIC, federal courts interpreting similar federal law have "explicitly rejected the proposition that government officials, by virtue of their positions, forfeit their personal privacy for FOIA purposes." *Fund for Constitutional Government* v. *National Archives,* 656 F.2d 856, 864 (D.C. Cir. 1981). "We [hold] that government officials have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives." *Baez* v. *United States Department of Justice,* 647 F.2d 1328, 1339 (D.C. Cir. 1980). Thus the FOIC, in determining if an invasion of privacy would result from disclosure, used too strict a standard in evaluating the privacy rights of public officials.

As a predicate to its conclusion, the FOIC found that the requested evaluation did describe such personal matters as the plaintiff's "aptitude, attitude, basic competence . . . trustworthiness, ethics, [and] interpersonal relationships . . . ." This conclusion was based, in part, upon the uncontroverted testimony of John Kelly, the chief state's attorney, that the report was for the "eyes only" of a limited group and the testimony of James Murphy, the chairman of the criminal justice commission, that the plaintiff had an expectation of privacy in the evaluation and that members of the commission would destroy their copies of such evaluations after meeting. In examining the FOIC's findings in the light of the federal standards for an invasion of privacy, we agree with the Superior Court that disclosure of the report would carry significant poten-

tial for embarrassment and that Connelly entertained a reasonable expectation of privacy in the information contained in the evaluation. We conclude, therefore, that disclosure of the personnel evaluation would constitute an invasion of privacy as a matter of law.

The FOIC, in determining if an invasion of privacy would result from disclosure of the personnel evalution, applied a balancing test. Section § 1-19 (b) (2) does not require such a balancing test. We have held that if the "statutory language . . . is clear and unambiguous . . . courts cannot, by construction, read into such statutes provisions which are not clearly stated." *Frazier* v. *Manson,* 176 Conn. 638, 642, 410 A.2d 475 (1979). We note that an exemption under § 1-19 (b) (1), which excludes disclosure of "preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure," expressly requires a balancing test in determining when information may be disclosed. The fact that the legislature specifically declined to include a balancing requirement in § 1-19 (b) (2) is strong evidence that a balancing test is inappropriate when applying § 1-19 (b) (2). Expressio unius est exclusio alterius. "A statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way." *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 620, 136 A.2d 792 (1957); see *Durham* v. *Parole Board,* 382 Mass. 494, 498, 416 N.E.2d 954 (1981); *Iannelle* v. *Fire Commissioner,* 331 Mass. 250, 252, 118 N.E.2d 757 (1954). 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 47.23. We conclude that within the language itself of "the Freedom of Information Act, the legislature has [already balanced] the public's right to know and the private needs for confidentiality." *State* v.

*Januszewski,* 182 Conn. 142, 171, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Therefore, neither the FOIC nor the courts are required to engage in a separate balancing procedure beyond the limits of the statute.

The FOIC contends that our decision in *Board of Education* v. *Freedom of Information Commission,* 210 Conn. 590, 596, 556 A.2d 592 (1989), approved the application of a balancing test to determine whether disclosure of a job evaluation would constitute an "invasion of personal privacy" under § 1-19 (b) (2). In that case, we rejected the FOIC's blanket ruling that disclosure of job evaluations of school employees would *not* be protected as invasive of privacy under that section of the statutes. In so doing, we noted the balancing test used in *Hartford* v. *Freedom of Information Commission,* supra, 433 n.14, and derived from *State* v. *Januszewski,* supra, 171–72. The *Januszewski* test was designed only for dealing with the rights of criminal defendants in situations not already covered by the exemptions explicitly set out in the FOIA. Therefore, to the extent that *Board of Education* suggests that the *Januszewski* test should be applied to situations already covered by specific statutory provisions of the FOIA, we now hold otherwise.

Finally, we note that federal courts have used a balancing test in applying the parallel exemption under federal law. *Aronson* v. *United States Department of Housing & Urban Development,* 822 F.2d 182, 185 (1st Cir. 1987). In this respect, however, the language of the federal statute is significantly different from the Connecticut statute. Title 5 of the United States Code, § 552 (b) (6) provides that records are exempt if they are "personnel . . . files the disclosure of which would constitute *a clearly unwarranted* invasion of personal

privacy." (Emphasis added.) In *Department of Air Force* v. *Rose,* 425 U.S. 352, 372, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976), the United States Supreme Court, citing Senate Report No. 813, p. 9, indicated that the federal balancing test was based on the "clearly unwarranted" language: " 'The phrase "clearly unwarranted invasion of personal privacy" enunciates a policy that will involve a balancing of interest between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.' " Inasmuch as General Statutes § 1-19 (b) (2) does not include a similar expression of a legislative intent to require a balancing test, we decline to interpolate one.

The judgment is affirmed.

In this opinion PETERS, C. J., SHEA and HULL, Js., concurred.

BORDEN, J., concurring. Ordinarily, I would be loathe to overrule precedent interpreting a statute, particularly where, as in the case of the Freedom of Information Act, the legislature has had numerous occasions to reconsider that interpretation and has failed to do so. In this case, however, I agree that the initial interpretation was phrased too broadly and has been reaffirmed by this court without examination. Thus, it is of greater importance in this case that the interpretation of the act be correct than that it be consistent with past precedent.

The balancing test for interpretation of the exemptions from the act found in General Statutes § 1-19 (b) originated in *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 328-29, 435 A.2d 353 (1980), and was based on "the act's provisions and its legislative history." Id., 328-29 n.2. *Wilson,* however, was concerned only with the exemption contained in

§ 1-19 (b) (1), which is the only exemption that specifically incorporates a balancing test. After *Wilson,* this court reaffirmed that balancing test in the context of other exemptions, including § 1-19 (b) (2). See *Board of Education* v. *Freedom of Information Commission,* 210 Conn. 590, 596, 556 A.2d 592 (1989); *Commissioner of Consumer Protection* v. *Freedom of Information Commission,* 207 Conn. 698, 701, 542 A.2d 321 (1988); *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 433 n.14, 518 A.2d 49 (1986); *Maher* v. *Freedom of Information Commission,* 192 Conn. 310, 315, 472 A.2d 321 (1984); *State* v. *Januszewski,* 182 Conn. 142, 171–72, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

The legislative history, however, indicates that the legislature performed the balancing process in drafting the act, and there is no indication therein that, except where specifically provided, a further balancing process was contemplated in the application and interpretation of the exemptions. The legislative balancing process was performed in creating the general policy of disclosure, and in carving out the specific exemptions. See 18 S. Proc., Pt. 5, 1975 Sess., pp. 2324, 2326–27, 2329; 18 H.R. Proc., Pt. 8, 1975 Sess., pp. 3902, 3910–11, 3913; Conn. Joint Standing Comittee Hearings, Government Administration and Policy, 1975 Sess., p. 304.

I agree with the majority, therefore, that, except for § 1-19 (b) (1), a balancing test is inappropriate. I also agree with the majority that the federal balancing test for the analogous exemption from the federal Freedom of Information Act is based on the requirement that the invasion of personal privacy be "clearly unwarranted." *Department of Air Force* v. *Rose,* 425 U.S. 352, 378 n.16, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976). No such language appears in § 1-19 (b) (2).

I agree with the majority, furthermore, that the reasonable expectation of privacy on the part of the persons giving the information contained in a personnel file must be taken into account in deciding whether disclosure would constitute an invasion of personal privacy. This is true, not only because that expectation necessarily relates to whether the subject of the file would reasonably consider disclosure of the information to be an invasion of personal privacy, but also because of the strong public policy underlying the legislative choice of this exemption, as well as others—the need for full and frank exchange of information relating to the evaluation of public employees.

In this case, therefore, although the freedom of information commission was simply trying to follow our previous case law by applying a balancing test, since we now decide that such a test is inappropriate under § 1-19 (b) (2), the case should be remanded for the commission to apply the proper test, unless the facts make it clear that the commission could have come to only one conclusion as a matter of law. An examination of the evaluation report in question, which has been filed under seal in this case, leads me to conclude that disclosure of it would be, as a matter of law, an invasion of Connelly's personal privacy.

My examination of the report at issue in this case persuades me that the trial court was correct in its ruling. Although all of the comments therein are phrased in terms of Connelly's performance as a state's attorney, under the circumstances of this case they also came within his reasonable expectation of personal privacy, because many of them also relate to what may fairly be regarded as personal characteristics. Furthermore, disclosure of this report could subject him to annoyance, embarrassment and harassment in both his professional and personal lives. Finally, it is clear from

this record that the circumstances surrounding this report were such that it was prepared and given with a strong and reasonable expectation of privacy on the part of both Kelly and the criminal justice commission. Disclosing it would severely undermine the policy of full and frank exchange of information underlying the need for such reports.