[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Town of West Hartford, appeals from the decision of the Connecticut State Board of Labor Relations (Labor Board) finding it in violation of the Municipal Employees Relations Act (MERA, General Statutes § 7-470, et seq.) and ordering the disclosure of requested documents to the West Hartford Police Union.
The West Hartford Police Union Council 15, AFSCME, AFL-CIO (Union) represents the West Hartford Police Department's uniformed and investigatory personnel. The Town and Union are parties to a collective bargaining agreement, and subject to the provisions of MERA with respect to their collective bargaining relationship. In connection with the investigation of a grievance filed by a West Hartford police officer, the Union requested copies of written monthly performance evaluations of Town police officers.
An established principle of American labor law requires employers to provide relevant information needed by the union to perform the union's obligation to enforce the collective bargaining agreement. Detroit Edison v. NLRB,440 U.S. 301, 303, 99 S.Ct 1123, 59 L.Ed.2d 333; WestHartford Board of Education v. State Board of LaborRelations, 190 Conn. 235 (1983).
In response to the Union's request for the performance evaluations, the Town invoked the procedures of General Statutes § 1-20a(b).[1] Nineteen of the thirty officers in question objected to the disclosure of their evaluations. Accordingly, the Town declined to disclose the performance evaluations of the objecting officers. The Union complained to the Labor Board alleging that the Town had engaged in practices prohibited by § 7-470 (a)(1), (2) and (4) of MERA by refusing to provide such information.
The parties were heard by the Labor Board on the facts and law. The Labor Board concluded in its decision of August 25, 1997 that the Town was obligated under MERA to provide the requested information.
The Town filed a timely appeal on October 6, 1997 under CT Page 5057 the Uniform Procedure Act (UAPA), General Statutes §§ 4-166, et seq., § 4-183. The answer and record were filed by the Labor Board on October 24, 1997. Briefs were filed by the Town on December 19, 1997; the Union on January 20, 1998 and the Labor Board on January 20, 1998. The parties were heard by the court in oral argument on April 7, 1998.
In its brief the Town argues that pursuant to § 1-20a, only the Freedom of Information Commission (FOIC) could order release of the performance evaluations of the objecting officers. The Town also claims that the performance evaluations are exempt from disclosure as a matter of law and/or that the release of these evaluations would constitute an invasion of privacy. The court finds the issues for the defendants and dismisses the appeal.
In addressing the issues raised in this appeal it is critical to analyze the nature of the material being disclosed. In its decision the Labor Board found the following facts related to the performance evaluations.
 5. Written performance evaluations of police officers are made on a monthly basis by supervisors.
 6. The monthly performance evaluation form . . . contains four (4) parts. One part lists the number of times the officer performed certain specific activities during the evaluation period. . . . [A]nother part provides for the supervisor's comments. A third part provides space for [dated] notes. . . . The final part is an overall monthly score in 5% increments ranging from 65% to 95+%, with 65% representing failure and 95% representing superior performance.
 7. The monthly performance evaluations are summarized every six (6) months utilizing a certain form, a blank copy of which is attached hereto as. Exhibit D.
 8. Each officer is afforded the opportunity to examine his or her monthly performance evaluations as well as his or her semi-annual performance evaluation, and to obtain copies thereof.
9. The monthly performance evaluations and the semiannual CT Page 5058 performance evaluations are retained as records in the Police Department. The semi-annual performance evaluations are placed in the officers' personnel files as maintained by the Town.
 10. In the event an officer participates in a competitive examination administered by the Town, the average of his or her last two semi-annual performance evaluations are incorporated as 10% of the overall score an officer receives as part of the promotional examination process set forth in the Personnel Rules. (Eg. 75%+85% average to 80%:10=8% addition to total score).
 11. Performance evaluations are available to the person or persons making appointments to promotional positions at the Town's police department.
 12. West Hartford Police Officer Paul Gionfriddo (hereinafter "the Grievant") filed a step 1 grievance concerning a monthly performance evaluation which he had received.
(Return of Record (ROR), Item 5, Decision and Order, pp. 2-3.) In addition the only relevant testimony established that the forms did not routinely contain private, confidential items or information relating to personal events in an officer's life which impacted their performance (ROR, Item 3, Transcript, pp. 44, 100, 105-06).
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result CT Page 5059 of this alleged procedural deficiency." Jutkowitz v.Department of Health Services, 220 Conn. 86, 94 (1991).
"With regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57-58 (1991). "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v.Commission on Hospitals Health Care, 182 Conn. 314, 318
(1980). Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Id.
Where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion."United Parcel Service, Inc. v. Administrator, UnemploymentCompensation Act, 209 Conn. 381, 385 (1988).
"Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies to expound and apply governing principles of law." (Citations omitted; internal quotation marks omitted.) Connecticut Light Power Co. v. Texas-Ohio Power, Inc., 243 Conn. 635, 642-43
(1998).
The parties are at odds over the interplay of § CT Page 50601-20a(b) and § 7-470. However, an alternate basis for the Labor Board's decision is the Town's lack of a reasonable belief "that the disclosure of such records would legally constitute an invasion of privacy. . . ." In order to initiate the § 1-20a(b) procedures such belief must exist.
The Labor Board in its decision viewed the invasion of privacy standards under labor relations law and the Freedom of Information Act (FOIA) as consistent. (ROR, Item 5, p. 7.) Pursuant to such standard or the case law under either MERA or FOIA the disclosure of the performance evaluations is not an invasion of personal privacy.
The Town for its claim of reasonable belief relies primarily on Chairman v. FOIC, 217 Conn. 193 (1991). The Town cites Chairman as authority for its contention that "performance appraisals are exempt from disclosure as a matter of law." Chairman specifically dealt with the disclosure of the Waterbury State's Attorney's performance evaluation and held:
 As a predicate to its conclusion, the FOIC found that the requested evaluation did describe such personal matters as the plaintiff's "aptitude, attitude, basic competence . . . trustworthiness, ethics, [and] interpersonal relationships . . . ." This conclusion was based, in part, upon the uncontroverted testimony of John Kelly, the chief state's attorney, that the report was for the "eyes only" of a limited group and the testimony of James Murphy, the chairman of the criminal justice commission, that the plaintiff had an expectation of privacy in the evaluation and that members of the commission would destroy their copies of such evaluations after meeting. In examining the FOIC's findings in the light of the federal standards of an invasion of privacy, we agree with the Superior Court that disclosure of the report would carry significant potential for embarrassment and that Connelly entertained a reasonable expectation of privacy in the information contained in the evaluation. We conclude, therefore, that disclosure of the personnel evaluation would constitute an invasion of privacy as a matter of law.
CT Page 5061
Chairman v. FOIC, supra, 217 Conn. 199-200.
What was addressed in Chairman was "the" performance evaluation. The case turned on the specific evidence of the information particularly addressed in the evaluation including his "aptitude, attitude, basic competence . . . trustworthiness, ethics and interpersonal skills." An interpretation of Chairman's holding to apply to all performance evaluations is entirely inconsistent with the leading and subsequent case on "invasion of personal privacy," Perkins v. FOIC,228 Conn. 158 (1993). In Perkins, the Supreme Court for the first time articulated a comprehensive definition of an invasion of privacy, noting:
 Although this court has had previous occasions to apply the statutory exemption for "invasion of personal privacy" in the circumstances of a particular case; see e.g.; Chairman v. Freedom of Information Commission, supra, 198; we have not undertaken to articulate a comprehensive definition of what this phrase means . . . . The time has come to fill that void.
Id., 169. Thus, Chairman cannot be understood to constitute a comprehensive definition of invasion of personal privacy which would insulate all performance evaluations. See also,Department of Public Safety v. FOIC, 242 Conn. 79, 87 (1997) (case-by-case analysis of an invasion of privacy claim was established).
In filling the void, the Perkins decision adopts the tort standard for invasion of privacy as articulated in the Restatement of Torts, 3 Restatement (Second) Torts § 652D (1977).
 Informed by the standard, the invasion of personal privacy exception of § 1-19 (b)(2) precludes disclosure, therefore, only when the information sought by a request does not pertain to legitimate matters of public concern and is highly offensive to a reasonable person. . . . [W]e are judging an invasion of privacy in terms of the objective common law concept of the CT Page 5062 "reasonable person."
Perkins v. FOIC, supra, 175. Perkins was applying §1-19 (b)(2) rather than § 1-20a(b); however, it sets forth the measure of what would "legally constitute an invasion of privacy."
Perkins also notes: "The legislature has, furthermore, determined that disclosures relating to the employees of public agencies are presumptively legitimate matters of public concern." Id., 174.
The Town's claim as to the privacy of performance evaluations has been categorically rejected by the FOIC. See, In the Matter of Dick Conrad and the New Haven Registerv. Superintendent, Ansonia Public Schools, FIC #93-229 (December 29, 1993) and Walter J. Casey v. Chairman, Boardof Education, Town of Darien, FIC #1997-068 (October 22, 1997). In both cases the FOIC ordered the disclosure of performance evaluations of school superintendents.
In applying the FOIA (§ 1-7 et seq., including §1-20a(b)) the basic premise is that: "The Freedom of Information Act expresses a strong legislative policy in favor of the open conduct of government and free public access to government records." Wilson v. FOIC,181 Conn. 324, 328 (1980). "The general rule under the Freedom of Information Act is disclosure with exceptions to the rule being narrowly construed." New Haven v. FOIC,205 Conn. 767, 774 (1988); Superintendent v. FOIC, 221 Conn. 217, 232
(1992); Perkins v. FOIC, supra, 228 Conn. 167.
The Town, without citing to a single documented example of personal information on the requested forms, seeks to expand the narrow personal privacy exemption for materials which would objectively be highly offensive upon disclosure to documents which are primarily numerical measures of activity and performance.
The Town's challenge to the evidentiary basis of the decision is measured by the substantial evidence rule.
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the CT Page 5063 agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Citations omitted; internal quotation marks omitted.)Dolgner v. Alander, 237 Conn. 272, 280 (1996).
"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Citations omitted; internal quotation marks omitted; footnote omitted.) Dolgner v.Alander, 237 Conn. 272, 281 (1996). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) Id.
The Town relies on speculation as to what possibly is in the evaluations. The one witness who testified as to the content of the evaluations (Officer Gionfriddo) had never observed anything personal on evaluations (ROR, Item 3, Transcript, pp. 44, 105). Clearly, the possibility of personal information does not establish the existence of highly offensive personal data on the evaluation forms. The substantial evidence relied on by the Labor Board suggests the opposite.
The decision is affirmed and the appeal is dismissed.
McWEENY, J.