DETROIT FREE PRESS, INC v DEPARTMENT OF STATE POLICE

Docket No. 221772. Submitted July 11, 2000, at Detroit. Decided November 3, 2000, at 9:25 A.M. Leave to appeal sought.

Detroit Free Press, Inc., brought an action in the Wayne Circuit Court against the Department of State Police, the Wayne County Clerk, and the Ingham County Clerk, alleging that the defendants had violated the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, in failing to disclose information requested by the plaintiff. The request to the State Police asked that the plaintiff be allowed to inspect and copy records indicating whether an attached list of Michigan state legislators have concealed weapons permits and, if so, the type of permit, any relevant restrictions, and any reason for requesting or granting the permit. The State Police denied the request altogether. The requests to the county clerks sought permission to inspect and copy records reflecting all currently valid concealed weapons permits issued by the counties including the applicant's name, occupation, and reason for requesting or granting the permit. The plaintiff thereafter attempted to narrow the search to exclude permit holders who are private citizens and not public officials. The counties agreed to release the information but only to the extent that it would not reveal the identity of the permit holders involved. The trial court, Dalton A. Roberson, J., entered an order granting the defendants' motion for summary disposition. The plaintiff appealed.

The Court of Appeals *held*:

1. Subsection 13(1)(a) of the FOIA, MCL 15.243(1)(a); MSA 4.1801(13)(1)(a), requires that two factors must exist to exempt information from public disclosure. The information must be of a personal nature and the disclosure must constitute a clearly unwarranted invasion of privacy.

2. The fact that a person has requested or secured permission to carry a concealed weapon is information of a personal nature that reveals intimate or embarrassing details of an individual's private life, the disclosure of which might result in safety concerns. This information is no less private, intimate, or potentially embarrassing because it concerns state legislators or other public officials.

3. The public interest in disclosure of the information sought from the State Police is minimal. The core purpose and public policy underlying the FOIA would not be served through disclosure of the requested information.

4. The information requested from the county clerks can conceivably assist the public in understanding the operations, activities, and affairs of local concealed weapons licensing boards. There is a legitimate concern whether public officials are treated more favorably than others by the boards. That concern was addressed by the county clerks when they deleted information that would identify the applicants while disclosing information that might indicate the applicants' status as public officials. This approach fulfilled the goals of the FOIA without any clearly unwarranted invasion of the privacy of public officials.

Affirmed.

1. FREEDOM OF INFORMATION ACT — PUBLIC RECORDS — DISCLOSURE — EXEMPTIONS — PUBLIC OFFICIALS — CONCEALED WEAPONS PERMITS.

A public body may exempt from disclosure as a public record under the Freedom of Information Act information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy; information regarding concealed weapons permits is information of a personal nature because it is an intimate and potentially embarrassing detail of a person's life, the disclosure of which might result in safety concerns (MCL 15.243[1][a]; MSA 4.1801[13][1][a]).

2. FREEDOM OF INFORMATION ACT — PUBLIC RECORDS — DISCLOSURE — EXEMPTIONS — PUBLIC INTEREST — PRIVACY INTEREST.

The determination whether disclosure of information sought pursuant to a Freedom of Information Act request would be a clearly unwarranted invasion of an individual's privacy for purposes of a statutory exemption from disclosure involves balancing the public interest in disclosure against the privacy interest sought to be protected by the statutory exemptions; the relevant public interest in disclosure is the extent to which disclosure would serve the core purpose of the act, which is to contribute significantly to the public's understanding of the operations or activities of the government so that members of the public may fully participate in the democratic process (MCL 15.231[2], 15.243[1][a]; MSA 4.1801[1][2], 4.1801[13][1][a]).

*Honigman Miller Schwartz and Cohn* (by *Herschel P. Fink* and *Cynthia G. Thomas*), for the plaintiff.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Thomas Quasarano*, Assistant Attorney General, for the Department of State Police.

*Cohl, Stoker & Toskey, P.C.* (by *Ruth E. Mason* and *Richard D. McNulty*), for the Ingham County Clerk.

*Edward Ewell, Jr.*, Wayne County Corporation Counsel, and *Harnetha W. Jarrett*, Assistant Corporation Counsel, for the Wayne County Clerk.

Before: BANDSTRA, C.J., and GAGE and WILDER, JJ.

BANDSTRA, C.J. In *Mager v Dep't of State Police*, 460 Mich 134; 595 NW2d 142 (1999), the Supreme Court held that information regarding whether private citizens own guns is information of a personal nature, the disclosure of which would constitute a clearly unwarranted invasion of privacy for purposes of an exemption from the disclosure requirements under Michigan's Freedom of Information Act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.* We conclude that the same analysis applies here with respect to information regarding concealed weapons permits issued to state legislators and other public officials and affirm the trial court's order granting defendants' motion for summary disposition.

FACTS

This case involves FOIA requests made by plaintiff, the Detroit Free Press, Inc.[1] Initially, the Free Press

---

[1] Defendants initially argue that, because of a previous, similar FOIA lawsuit involving the same parties, see *Detroit Free Press, Inc v Dep't of State Police*, 233 Mich App 554; 593 NW2d 200 (1999), the doctrines of collateral

requested from defendant Department of State Police that it be allowed "to inspect and copy records that indicate whether the attached list of Michigan state legislators have concealed weapons permits, and, if so, the type of permit, any relevant restrictions, and the reason for requesting or granting the permit." The requests to defendants Wayne County Clerk and Ingham County Clerk sought permission "to inspect and copy records reflecting all currently valid concealed weapons permits issued by [the] County, including, but not limited to, the name, occupation and reason for requesting or granting of the permit." Following the Supreme Court's decision in *Mager*, in a supplemental brief filed in the trial court, the Free Press attempted to narrow its request to the counties by specifying that it no longer sought the names of concealed weapons permit holders who are "private citizens [and] not public officials."[2] Both counties responded to the FOIA requests by indicating that they would release the information to the extent it would

---

estoppel, res judicata, and the law of the case apply to bar this appeal. However, the lower court did not consider these issues and, ordinarily, our review is limited to issues decided below. *Chilingirian v City of Fraser*, 194 Mich App 65, 70-71; 486 NW2d 347 (1992), remanded on other grounds 442 Mich 874 (1993). Further, as plaintiff points out, the doctrines of res judicata and collateral estoppel are inapplicable here because the Supreme Court's decision in *Mager* established a new legal context for consideration of the merits of this appeal, different from that available to the lower court in reaching the decision that defendants argue bars this action. Regarding the law of the case argument made by defendants, this Court's decision in *Detroit Free Press, supra* at 559, n 1, specifically stated that the Court did not "express an opinion on the merits" of the issues presented there.

[2] In granting defendants' motion for summary disposition, the trial court did not address the import of this revised request. Without considering whether the Free Press properly amended its FOIA request in this fashion, we will consider the merits of the arguments presented as applicable to the narrowed request.

not reveal the identity of the permit holders involved. The Department of State Police responded by denying the FOIA request altogether.

The Free Press filed this action alleging that defendants had thus violated the FOIA. Upon cross-motions for summary disposition, the trial court concluded that the requested information was exempt from the FOIA's disclosure requirements and ruled in favor of defendants.

## STANDARD OF REVIEW AND RELEVANT FOIA PROVISIONS

Recently, in *Herald Co v Bay City*, 463 Mich 111, 117-119; 614 NW2d 873 (2000), our Supreme Court stated the standard of review and summarized the FOIA provisions applicable to this case:[3]

> The trial court granted summary disposition for defendants on the basis of its interpretation of the Freedom of Information Act, MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.* . . . This Court reviews the grant or denial of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Similarly, we review questions of statutory construction de novo as a question of law. *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999); *Mager* [*supra* at 143, n 14]. Because our judicial role precludes imposing different policy choices than those selected by the Legislature, our obligation is, by examining the statutory language, to discern the legislative intent that may reasonably be inferred from the words expressed in the statute. *People v McIntire*, 461 Mich 147, 152-153; 599 NW2d 102 (1999). If the language of a statute is clear and unambiguous, the plain meaning of the statute

---

[3] As the Supreme Court noted, *Herald Co, supra* at 118, n 5, the version of the FOIA quoted in its opinion was a predecessor to the current version, on which the parties rely in this case. There has been no substantive change to the provisions quoted in *Herald Co.*

reflects the legislative intent and judicial construction is not permitted. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). We must give the words of a statute their plain and ordinary meaning. MCL 8.3a; MSA 2.212(1); *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995).

\*     \*     \*

Subsection 1(2) of the FOIA declares that

"[i]t is the public policy of this state that all persons . . . are entitled to *full and complete information regarding the affairs of government* and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process." [MCL 15.231(2); MSA 4.1801(1)(2) (emphasis added).]

Consistent with this broadly declared legislative policy, the FOIA's specific provisions generally require the full disclosure of public records in the possession of a public body:

"(1) Upon an oral or written request which describes the public record sufficiently to enable the public body to find the public record, a person has a right to inspect, copy, or receive copies of a public record of a public body . . . .

"(2) A public body shall furnish a requesting person a reasonable opportunity for inspection and examination of its public records, and shall furnish reasonable facilities for making memoranda or abstracts from its public records during the usual business hours. . . .

"(3) This act does not require a public body to make a compilation, summary, or report of information . . . .

"(4) This act does not require a public body to create a new public record, except as required in sections 5 and 11, and to the extent required by this act for the furnishing of copies, or edited copies pursuant to section 14(1), of an already existing public record." [MCL 15.233; MSA 4.1801(3).]

The FOIA provides, in § 13, several exemptions which, if applicable, permit a public body to deny a request for disclosure of public records. On its express terms, the FOIA is a

prodisclosure statute, and the exemptions stated in § 13 are narrowly construed. *Mager, supra* at 143; *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285, 293; 565 NW2d 650 (1997); *Swickard v Wayne Co Medical Examiner*, 438 Mich 536, 544; 475 NW2d 304 (1991). The burden of proof rests on the party asserting the exemption. *Bradley, supra* at 293; *Swickard, supra* at 544.

At issue in the instant case is the following FOIA exemption:

"A public body may exempt from disclosure as a public record under this act:

"(a) Information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." [MCL 15.243(1); MSA 4.1801(13)(1).]

### ANALYSIS

By its terms, § 13 requires that two factors must exist to exempt information from public disclosure. "First, the information sought must be of a 'personal nature,' and, second, the disclosure of such information must constitute a 'clearly unwarranted,' invasion of privacy." *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 232; 507 NW2d 422 (1993).

Regarding the first of these factors, the Supreme Court has held that "the fact of gun ownership" is " 'information of a personal nature.' " *Mager, supra* at 143. Applying the standard announced in *Bradley, supra* at 294, that " 'information is of a personal nature if it reveals intimate or embarrassing details of an individual's private life,' " the *Mager* Court reasoned:

> The ownership and use of firearms is a controversial subject, as to which partisans of many stripes hold strong views. Further, knowledge that a household contains fire-

arms may make that house a target of thieves, and thus endanger its occupants. As the State Police warned in the application filed in this Court, "Disclosure under the FOIA to the world at large of the names and addresses of citizens who possess registered handguns would create a virtual shopping list for anyone bent on the theft of handguns, interested, for malicious reasons, in the identities and addresses of citizens who own handguns, and whatever else the criminal mind might evoke."

. . . A citizen's decision to purchase and maintain firearms is a personal decision of considerable importance. We have no doubt that gun ownership is an intimate or, for some persons, potentially embarrassing detail of one's personal life. [*Mager, supra* at 143-144.]

Although this case involves public officials, not private citizens, and information about concealed weapons permits, not just gun ownership, we conclude that the same analysis applies here.[4] If anything, the fact that a person has requested or secured permission to carry a concealed weapon is an even more intimate and potentially embarrassing detail of one's private life, compared with the mere fact of gun ownership. Further, while a citizen meeting the statutory criteria may own a gun, he need not articulate any specific purpose for doing so in order to comply with statutory registration requirements. In contrast, the concealed weapons statute requires applicants to show a particularized need for personal protection before a permit is issued. MCL 28.426(5); MSA 28.93(5). This information is no less private, intimate,

---

[4] We come to this conclusion realizing that *Mager* explicitly noted that it was not considering information regarding concealed weapons permits. *Mager, supra* at 135, n 2. We conclude that the *Mager* Court was merely clarifying the issue under consideration, not suggesting that a different result would apply in a concealed weapons permit case.

or potentially embarrassing because it concerns state legislators or other public officials.

The safety concerns the Supreme Court noted in *Mager* apply here with even greater force. In contrast to what was required of gun registrants in *Mager*, persons applying for a concealed weapons permit must state on the application a safety concern that they feel justifies carrying a concealed weapon. MCL 28.426; MSA 28.93. That requirement applies to public officials, who enjoy no special status under the statute with regard to possession of a concealed weapon. Disclosure, pursuant to an FOIA request, could create a danger even greater than that created by disclosure of public information regarding who owns a gun, as in *Mager*. While mere gun ownership might reveal a generalized safety concern, concealed weapons applicants must specify exactly why they feel at risk, thus potentially placing themselves even more in jeopardy. Again, the public officials whose privacy is at issue in the present case have the same right as other citizens to the protection recognized by the *Mager* Court.[5]

Plaintiff argues that concealed weapons licensing boards (gun boards) are subject to the Open Meetings Act, MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, and that, therefore, the identities of concealed weapons permits applicants are disclosed during the permitting process. Defendants disagree, arguing that the Open Meetings Act permits closed sessions to consider information exempt from disclosure by statute, MCL 15.268(h); MSA 4.1800(18)(h), and that the identity of individual applicants is, in fact, protected from disclo-

---

[5] And, as defendants point out, disclosing the names of persons granted concealed weapons permits would, in effect, disclose the names of persons who own guns, contrary to *Mager*.

sure during the permitting process. Further, defendants argue that the "Federal Privacy Act," for which they provide no citation, applies to protect information on the concealed weapons permit application. In any event, regardless of the legal requirements that might affect disclosure during the permitting process, the record is not clear in this case with regard to whether disclosure actually occurred with respect to the persons whose identities would be revealed through compliance with plaintiff's requests. In the absence of that record, we cannot conclude that the privacy interest of the public officials involved here has already been relinquished[6] and that, accordingly, the protections otherwise afforded by the § 13 exemption do not apply.

We next turn to the question whether disclosure of this personal information would be a "clearly unwarranted invasion of an individual's privacy" under subsection 13(1)(a) of the FOIA. MCL 15.243(1)(a); MSA 4.1801(13)(1)(a).[7] This involves balancing the public

---

[6] We do not address here the issue whether public disclosure of information during the concealed weapons permitting process would eliminate the protection of the FOIA privacy exemption with regard to a later disclosure of that same information from some other source. We note, however, that, in a similar context, the United States Supreme Court has reasoned that it does not, concluding that "[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *United States Dep't of Defense v Federal Labor Relations Authority*, 510 US 487, 500; 114 S Ct 1006; 127 L Ed 2d 325 (1994).

[7] Plaintiff argues that we must first examine whether defendants would have an actionable claim for invasion of privacy at common law. We reject that approach, because it was not the approach followed in *Mager*. Further, we note that the Supreme Court has stated that, although the common law might be helpful in analyzing the FOIA's "invasion of privacy" exemption, the scope of privacy protected by the FOIA "may not be coextensive" with the protection afforded by the common law. *Swickard, supra* at 547.

interest in disclosure against the privacy interest the § 13 exemption seeks to protect. *Mager, supra* at 145. " '[T]he only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding *of the operations or activities of the government.*' " *Id.*, quoting *United States Dep't of Defense v Federal Labor Relations Authority*, 510 US 487, 495; 114 S Ct 1006; 127 L Ed 2d 325 (1994) (emphasis in original). As stated in the Michigan FOIA,

> [i]t is the public policy of this state that all persons . . . are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act . . . so that they may fully participate in the democratic process. [MCL 15.231(2); MSA 4.1801(1)(2).]

We have already described one side of the balance, the privacy concerns that the § 13 exemption would protect if applied in this case. To reiterate, information regarding concealed weapons permits sought by or held by public officials is an intimate and potentially embarrassing detail of their personal life, the disclosure of which might result in safety concerns. We must consider whether that side of the balance is outweighed here by determining the extent to which the "core purpose" and "public policy" underlying the FOIA would be served through disclosure of the requested information.

We conclude that the public interest in disclosure of the information sought from the Department of State Police is minimal, at best, under these standards. Michigan state legislators who apply for a concealed weapons permit are exercising a right guaran-

teed to all Michigan citizens. Their decisions to seek a permit, or their receipt of one, might be related to their jobs in government but then only tangentially, for example, if safety concerns arise out of their public figure status. Information regarding concealed weapons permits would do nothing to illuminate the public's understanding of the "operations or activities" or "affairs" of government in which legislators are involved. Whether a legislator has applied for or received a concealed weapons permit has nothing whatsoever to do with whether that legislator is ably representing constituents, knowledgeably voting on issues, honestly reporting office expenditures, or otherwise fulfilling the duties of public service. Although plaintiff relies on cases like *Booth Newspapers, supra,* and *Bradley, supra,* those precedents "have given access to information *regarding the manner in which public employees are fulfilling their public responsibilities." Mager, supra* at 142-143 (emphasis supplied). As pointed out by the trial court here, these cases involve requests for information such as work personnel files, written performance evaluations, and travel logs. In contrast to this kind of information, the information plaintiff seeks from the Michigan State Police here does not regard, in any fashion, the manner in which public employees are fulfilling their public responsibilities.

The Free Press argues that the place of guns in our society is highly controversial and, of course, we readily agree. However, that is not automatically enough to tip the balance in favor of the public's interest in disclosure.[8] We see no way that knowledge

---

[8] If a public controversy was alone sufficient to warrant disclosure, all manner of information might be targeted by FOIA requests. For example, a

about legislators' concealed weapons permits would better enable the citizenry to understand the debate regarding guns or the votes that legislators cast on bills relating to that debate. Even without the disclosures the Free Press seeks, legislators must publicly vote on gun regulation proposals and be ready to explain the positions they take to the citizens they represent. Information regarding their own personal concealed weapons status would add nothing of value to that process.

In contrast, with respect to the defendant county clerks, information about concealed weapon permits can conceivably assist the public in understanding the operations, activities, and affairs of local gun boards. The Free Press argues that people have a right to know whether public officials are treated more favorably than others by gun boards and we agree that this is a legitimate concern.

That concern can be addressed, however, without identifying the individuals who have sought a concealed weapons permit. Instead, it is sufficient for the county clerks to delete information that would identify applicants while, to the extent possible in that process, leaving intact information that might indicate their status as public officials. This tailored approach would fulfill the goals of the FOIA without any clearly

---

debate between optometrists and ophthalmologists regarding legislation to change the scope of their licenses might prompt requests for legislators' medical or health insurance records to determine which of these eye specialists provides care for whom. A legislative battle between competing telephone carriers might prompt FOIA requests for records that might indicate which legislators use which service. These examples are perhaps not sufficiently "of a personal nature" to meet the § 13 exemption but they illustrate the problems attendant to plaintiff's broad understanding of what would warrant an invasion of privacy under that section.

unwarranted invasion of the privacy of elected officials. See MCL 15.244(1); MSA 4.1801(14)(1).

It appears from the record that defendant county clerks have already acquiesced to disclosing nonexempt information in this fashion. As the Free Press concedes in its brief, in their responses to the FOIA requests, both the Ingham County Clerk and the Wayne County Clerk agreed to provide information subject to this limitation.

We conclude that, all the defendants having responded appropriately to plaintiff's FOIA requests, the trial court appropriately dismissed this case by granting summary disposition to defendants.

We affirm.