F. William Cullins Montgomery County Attorney Judicial Center 300 East Main Independence, Kansas 67301
Dear Mr. Cullins:
As City Attorney, you ask whether the membership list of the Coffeyille City Golf Course is an open record. We assume, although you do not specifically ask, that this would include both names and home addresses.
The Kansas Open Records Act (KORA) declares the public policy of the State to be that "public records shall be open for inspection by any person" and the KORA is to be "liberally construed and applied to promote such policy."[1] The effect of this provision is that all public records are open unless otherwise permissibly or mandatorily closed by law. K.S.A. 45-221(a), as amended by L. 2001, Ch. 211, § 13, lists various categories of records that a public agency may discretionarily close. "The burden of proving that an item is exempt from disclosure is on the agency not disclosing."[2]
The provisions that are argued to be applicable to your question are K.S.A. 45-221(a)(26) and (a)(30), as amended, which state:
 "(a) Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose:
. . . .
 "(26) Records of a utility or other public service pertaining to individually identifiable residential customers of the utility or service, except that information concerning billings for specific individual customers named by the requester shall be subject to disclosure as provided by this act.
. . . .
 "(30) Public records containing information of a personal nature where public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy."
With subsection (a)(26), the issue is whether the golf course is a "public service," therefore allowing its membership list to be kept closed. One commentator has explained the history of this exception:
 "This exception was added in the House Committee on Federal and State Affairs at the request of Major Weber, Director of Computer Services for the City of Topeka, who argued it was an invasion of privacy for a public utility to release individually identifiable billing records. [Footnote omitted]. Originally, the exception stated that all individual requests for temporary discontinuance of a city utility were exempted from disclosure."[3]
The rest of the commentator's discussion of this exception is also in terms of utilities.
A dictionary definition of "public service" is:
 "A publicly or privately owned enterprise (as a waterworks, railway, telephone company) conducted for the benefit of the community as a whole."[4]
Construed more broadly the term "public service" would encompass essentially anything any governmental unit does. We do not believe that the Legislature intended such a broad construction. Given the presumption of openness in the KORA, we believe it means something much more limited-an essential service such as electric, water, telephone, transportation and the like. (We note that the State Corporation Commission used to be known as the Public Service Commission.) Golf courses would not be included in this category.
The other potentially applicable exception, "clearly unwarranted invasion of personal privacy," can also be read too broadly. In fact, it could easily swallow the entire principle of open records whenever information concerns any identifiable individual.
Although there are no reported cases in Kansas analyzing this KORA provision, most states have an analogous provision in their open records acts. The cases interpreting these statutes provide bewildering and inconsistent results. A case can be found to support almost any proposition. Many of the cases leap to a result, overlooking any real statutory interpretation.
One state that has attempted to set standards for interpreting whether release of records would constitute an invasion of privacy is Connecticut. Connecticut statutes allow information to be closed when they would constitute an "invasion of personal privacy."[5] The Connecticut Supreme Court adopted as the standard for interpreting this exemption Section 652D of the Restatement (Second) of Torts.[6] The Court said:
 "Section 652D of the Restatement (Second) of Torts defines a tort action for the invasion of personal privacy as being triggered by public disclosure of any matter that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public. By its terms, therefore, the tort action provides a private remedy to implement a public policy that closely approximates the public policy embodied in § 1-19(b)(2) of the FOIA.
 "The commentary accompanying § 652D underscores the close relationship between the tort action and the statutory exemption. Comment (b) of § 652D describes the types of personal and private information that are given protection under the law of torts: `Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.' 3 Restatement (Second), Torts § 652D, comment b (1977).
 "Comment (c) of § 652D recognizes, however, that not all personal and private information is protected from public disclosure: `The rule stated in [§ 652D] gives protection only against unreasonable publicity, of a kind highly offensive to the ordinary reasonable [person]. The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens. Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part. . . . Even minor and moderate annoyance . . . is not sufficient to give him a cause of action under the rule stated in this Section. It is only when the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises.' Finally, the Restatement recognizes that there is no invasion of a right to privacy when the subject matter of the publicity is of legitimate public concern. 3 Restatement (Second), Torts § 652D, comment (d) (1977).
 "The analogy between the tort action for `publicity given to private life' and the statutory exemption for invasion of personal privacy under § 1-19(b)(2) of the FOIA is close and compelling. We have recognized that a reasonable expectation of privacy must be viewed from the vantage point of an objective, ordinary reasonable person when we have held that a `person's reasonable expectation of privacy . . . [is a] significant factor . . . in determining if disclosure [of public records] would constitute an invasion of privacy.' (Internal quotation marks omitted.) West Hartford v. Freedom of Information Commission, 218 Conn. 256, 263, 588 A.2d 1368 (1991); Chairman v. Freedom of Information Commission, supra, 217 Conn. at 198, 585 A.2d 96. Therefore, the tort standard would only supply a remedy for, and § 1-19(b)(2) of the FOIA would only bar disclosure of, information that is highly offensive to the ordinary reasonable person. . . .
 "Informed by the tort standard, the invasion of personal privacy exception of § 1-19(b)(2) precludes disclosure, therefore, only when the information sought by a request does not pertain to legitimate matters of public concern and is highly offensive to a reasonable person. Enunciation of this standard does not signal a return to the invocation of a balancing test, which we explicitly rejected in Chairman v. Freedom of Information Commission, supra, 217 Conn. at 200-201, 585 A.2d 96. We conclude, as have courts in other jurisdictions, that an objective standard derived from the law of torts affords useful insight into the meaning of the phrase `invasion of personal privacy'. . . ."[7]
In a subsequent case, a Connecticut court held that home addresses of public employees are open under Connecticut law as disclosure of such is not "highly offensive."[8]
Kansas has adopted the Restatement test for when an invasion of privacy is an actionable tort.[9] One commentator on the KORA has said of the privacy exception:
 "[The privacy exception] is intended to exempt information in government records that relates to the intimate details of a person's private life. The public's right to have access to information contained in government records is thus qualified by protection of an individual's right to maintain the privacy of personal matters having no bearing on matters of public interest."[10]
We believe that a high standard is suggested by the words, "clearly unwarranted invasion of personal privacy." The privacy interest is one that applies only when release would reveal truly intimate details, or present some unusual danger.
Generally, cases from other jurisdictions that have found home addresses closed have done so when there are additional facts which would present unusual circumstances, such as danger. For instance, one court has concluded that disclosure of lists of names and addresses of gun owners is not required because it would present an unusual danger to the owners because of the danger of theft.[11] Another court concluded that young children's names and addresses may be closed because disclosure could create an unacceptable risk that they could be victimized.[12]
It is urged that Kansas court's would follow the lead of Kentucky which has held in a series of cases that home addresses are closed. The Kansas Open Records Act was patterned after Kentucky's.[13] Kansas, however, has a statute for which Kentucky has no analogue. K.S.A. 21-3914 makes it a crime to obtain a list of names and addresses from public records "for the purpose of offering for sale any property or service to the persons therein listed." This statute would have no meaning if lists of names and addresses were closed. Likewise, K.S.A. 45-221(a)(26), as amended, would be unnecessary if the names and addresses of public utility customer's were not otherwise open. (Again, Kentucky's open records act does not contain a corresponding provision.)
We believe that generally lists of names and addresses in public records are open, absent special circumstances. If, however, the public body knows that disclosure would create an unusual danger, or cause unusual and unwarranted embarrassment under a particular set of facts, then the information may be closed. This office has previously concluded that Social Security Numbers may be closed because of the danger of identity theft.[14] Likewise, if the Legislature has decided to close certain otherwise open records by enacting a specific statute, then the names and/or addresses can or should be closed.[15]
We are aware that the City of Coffeyville is considering an expansion of the city golf course. There could be a good number of valid uses of the list of members. It might be used to show that the decision makers are all members, leading to a suggestion of bias. Or the list could be used to send out a mailing opposing expansion.
Membership at a golf course, however, is not unusually embarrassing. It is a public activity played at a public facility. Nor does disclosure of golfers' names and addresses present any special danger. Absent actual knowledge that disclosure of a particular name or names on the list would create a special hazard (such as a woman who has notified the city that she has moved from an abusive spouse and is in hiding), we believe the entire list is open.
We do recognize that with the expansion of easily available information through the Internet, privacy interests may be changing. But we also believe that given our current statutes and the tradition in Kansas that names and addresses are open,[16] any large shift in openness of names and addresses is a policy decision for the Legislature to make.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Steve Phillips Assistant Attorney General
CJS:JLM:SP:jm
[1] K.S.A. 45-216(a).
[2] State Dept. of SRS v. Public Employee Relations Board,249 Kan. 163, 170 (1991).
[3] Fredrickson, Letting the Sunshine In: An Analysis of the 1984 Kansas Open Records Act, 33 U. Kan. L.R. 205, 254 (1985).
[4] Webster's Third New International Dictionary, 1836 (1993).
[5] Conn. Gen. Stat. § 1-19(b)(2).
[6] Perkins v. Freedom of Information Com'n, 635 A.2d 783 (Conn. 1993).
[7] Id. at 790.
[8] Director of Retirement and Benefit Services Div. v. Freedom ofInformation Com'n, 1999 WL 1063184. Connecticut's open records act's personnel exception does not contain an exception for "individually identifiable records" as does Kansas. See Attorney General Opinion No.97-52.
[9] See e.g. Werner v. Kliewer, 238 Kan. 289 (1985).
[10] Frederickson, supra note 3 at 256.
[11] Detroit Free Press, Inc. v. Department of State Police,622 N.W.2d 313 (Mich.App. 2000.); Mager v. Dep't of State Police,595 N.W.2d 142 (Mich.App. 1999).
[12] State ex rel. McCleary v. Roberts, 725 N.E.2d 1144 (Ohio 2000).
[13] Frederickson, supra note 3 at 210.
[14] Attorney General Opinions No. 98-38, 87-168.
[15] See, e.g., K.S.A. 38-1607 and 38-1608 (closing names of victims of juvenile sex offenses); see also Attorney General Opinion No. 97-52
(discussing K.S.A. 45-221(a)(4) closing "individually identifiable records" of employees except for names, positions, salaries, and lengths of service).
[16] See , e.g., Attorney General Opinions No. 87-168 and 88-117